# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Shiretta Justice                     :
                                      :
          v.                   : No. 1439 C.D. 2016
                                        : Argued: October 17, 2017
Pennsylvania State Police Trooper  :
Lombardo,                          :
                     Appellant   :


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
                    HONORABLE MICHAEL H. WOJCIK, Judge
                    HONORABLE DAN PELLEGRINI, Senior Judge


OPINION BY
SENIOR JUDGE PELLEGRINI          FILED: November 14, 2017


Pennsylvania State Police (PSP) Trooper Joseph Lombardo (Trooper Lombardo) appeals from an order of the Court of Common Pleas of Philadelphia County (trial court) denying his post-trial motions and entering judgment in favor of Shiretta Justice (Ms. Justice) for claims arising out of a traffic stop. Because Trooper Lombardo was acting within the scope of his employment when the underlying incident occurred, he is immune from suit under the doctrine of sovereign immunity. Accordingly, we reverse.


## I.

During the time-period relevant to this matter, Trooper Lombardo was assigned to the PSP's Bureau of Patrol with the Belmont Barracks in Philadelphia. On November 27, 2013, the day before Thanksgiving, he was on duty, in uniform, patrolling in a marked vehicle on I-76 (a.k.a. the Schuylkill Expressway) when he

pulled Ms. Justice's vehicle over and issued her tickets for driving without a license and failing to use a turn signal.

There are differing accounts as to what occurred during this traffic stop, but the basic facts are as follows. Because of her suspended license, Ms. Justice could not drive her vehicle. Ms. Justice's college-age stepson was with her at the time, but he did not have a valid driver's license. Ms. Justice then called a friend to attempt to arrange to have someone drive the car from the scene.

After waiting for the friend to arrive, Trooper Lombardo ordered that the vehicle be towed and ordered Ms. Justice and her stepson to exit the vehicle. They then climbed over the concrete barrier along the highway.[1] Ms. Justice informed Trooper Lombardo that her ride was coming and that he ruined her holiday. Trooper Lombardo then climbed over the barrier and approached Ms. Justice and the situation became heated. Ms. Justice claims that Trooper Lombardo had a nasty demeanor, jumped on her, twisted her arm behind her back and tried to push her to the ground. She claims to have suffered a sprained arm, wrist and back due to Trooper Lombardo's allegedly excessive use of force. Trooper Lombardo describes Ms. Justice as uncooperative and resistant, but that

---

[1] 75 Pa. C.S. § 6309.2(a)(1) requires, "If a person operates a motor vehicle . . . on a highway . . . of this Commonwealth while the person's operating privilege is suspended . . . as verified by an appropriate law enforcement officer . . . the law enforcement officer shall immobilize the vehicle . . . or, in the interest of public safety, direct that the vehicle be towed . . ."

she eventually allowed herself to be handcuffed.[2] When her friend arrived at the scene shortly thereafter, Ms. Justice's handcuffs were removed and Trooper Lombardo allowed her and her stepson to leave.

Shortly after this incident, Ms. Justice filed a complaint with the PSP and its Internal Affairs Division (IAD) conducted an investigation. Because of this investigation, IAD determined that Trooper Lombardo's actions did not violate any department regulations and the allegation of misconduct was not sustained. In a letter to Ms. Justice dated April 24, 2014, Captain James P. Raykovitz explained:

> After reviewing the investigative report, I also listened to all recorded interviews and viewed all video files associated with this investigation. As a result of this review, I have concluded that there was a breakdown in effective and accurate communication between you and the trooper regarding the arrival of the help you had contacted. The extended response time it took for your acquaintance to get to the scene placed all of you in a more dangerous situation on one of the more dangerous highways in the area. While this led to a more stressful environment, the actions of the trooper did not violate any Department regulations.
>
> The allegation of misconduct you made against the member of the Pennsylvania State Police is[,] therefore, <u>Not Sustained</u>. However, Trooper Lombardo will receive training to ensure that he handles similar incidents in a more succinct fashion.

---

[2] The stepson video recorded parts of the encounter on his cell phone, and two of these videos were entered into evidence before the trial court.

(Reproduced Record (R.R.) at 116a) (emphasis in original).

## II.

### A.

Ms. Justice then filed a complaint in the Court of Common Pleas of Philadelphia County naming Trooper Lombardo and the PSP as defendants, but later amended it by naming Trooper Lombardo as the sole defendant and deleting her prior averment that he was acting within the course and scope of his employment during their November 27, 2013 encounter. The amended complaint asserts claims of assault and battery, invasion of privacy – casting in a false light, intentional infliction of emotional distress, false arrest, false imprisonment and abuse of process, and seeks compensatory and punitive damages.

Trooper Lombardo filed preliminary objections to the amended complaint including a defense that he was immune from suit under the Sovereign Immunity Act. His preliminary objections were overruled and the case proceeded to arbitration. The arbitration panel found in favor of Ms. Justice, determining that Trooper Lombardo was acting outside the scope of his employment during the incident and awarded her $15,000 in damages. Trooper Lombardo simultaneously filed an appeal from that award and an answer to the amended complaint again asserting the affirmative defense of sovereign immunity. At the close of discovery, Trooper Lombardo filed a motion for summary judgment again asserting an immunity defense. The trial court denied his motion without comment or opinion and the case proceeded to jury trial.

4

**B.**

At trial, Ms. Justice testified that at the time of the incident, she was in her mid-thirties, had two school-age children, and was working as a hairstylist. On November 27, 2013, she and her stepson were traveling westbound on I-76 when she noticed a vehicle coming alongside hers. When she looked over, she saw Trooper Lombardo looking into her vehicle. He pointed for her to get off to the side of the road and she pulled over. Trooper Lombardo approached her vehicle and asked for her license and registration, which she provided. Ms. Justice testified that she asked him what she did wrong, and he responded that she had a suspended license and a busted taillight. He explained that her license had been suspended because she missed a payment on a prior ticket and that he would be towing her vehicle. He then walked away, but a few minutes later, he returned and asked if she knew someone with a license that could come move her vehicle and drive her from the scene. She agreed to call and make arrangements. Ms. Justice stated that Trooper Lombardo then threw two citations into her stepson's lap and walked away.

Several minutes later, Ms. Justice testified that Trooper Lombardo returned and asked her if she found a ride and, if so, how far away it was. She responded that her ride was on its way and should arrive soon and Trooper Lombardo again walked away. She then testified that the next thing she knew, a tow truck pulled in front of her car. She stated that she begged and pleaded with him not to tow her car and told him her ride was on its way and should be there shortly. Trooper Lombardo told her that he changed his mind, threw the paperwork from the tow truck driver into her car and ordered her out of the

5

vehicle. Ms. Justice testified that she continued to beg and plead with Trooper Lombardo, but he said, "Get out of the vehicle or I'm going to forcibly remove you from the vehicle." (R.R. at 204a.) Ms. Justice stated that at that point she "knew he meant business," so she grabbed what she could and got out of the vehicle and then climbed over the concrete barrier on the side of I-76 and watched the car being towed. (*Id.*)

She then testified that Trooper Lombardo approached her and offered her a ride, which she refused. Ms. Justice stated that by that point, Trooper Lombardo's demeanor was totally different as he had been "nasty and unreasonable initially." (*Id.*) Ms. Justice admitted that she told Trooper Lombardo "I hope, you know, you're happy. I hope you'll have a great holiday. My holiday, you know, is ruined now. Thank you for, you know, ruining my holiday." (*Id.*) Trooper Lombardo responded that he would be working so his holiday would be just fine.

Ms. Justice further testified that Trooper Lombardo again asked where her ride was, and she said it should be there any second. Trooper Lombardo again offered to give her and her stepson a ride, to which she replied she was not going to get in the trooper's car. She stated that Trooper Lombardo then jumped over the barrier, jumped her, wrestled her, twisted her arm behind her back, and tried to push her down to the ground. Ms. Justice testified that she did not understand what was happening, she was scared, and she started screaming and twisting around, trying to plead with him. She said she told Trooper Lombardo she had kids and asked what he was doing. She stated that Trooper Lombardo twisted her arm way

6

up her back and she eventually just let him handcuff her because he was hurting her. At that point, Trooper Lombardo said she should "calm down and stop acting like an animal . . . ." (R.R. at 204a.) Ms. Justice's ride arrived at the scene right after she was handcuffed. Trooper Lombardo immediately removed her handcuffs and walked away, and she and her stepson left the scene.

Ms. Justice testified that Trooper Lombardo never explained why he handcuffed her and never told her why she had to get in his car. She also testified that during the approximately 40-minute traffic stop, she never cursed at Trooper Lombardo, never used obscene language or gestures, never raised her voice or ignored him.

Ms. Justice testified that shortly after the incident, she called the PSP barracks to complain that she had been mistreated and mishandled by Trooper Lombardo. Because it was Thanksgiving eve, she was told to come to the barracks on Friday to lodge a complaint, which she did. She testified that she thought she was getting "the brushoff a little bit," and she had to insist on speaking to a supervisor. (R.R. at 207a.) On cross-examination, Ms. Justice stated that she was later interviewed by a PSP Internal Affairs officer who reviewed the entire incident with her, including video footage taken by her stepson. Counsel for Trooper Lombardo attempted to ask Ms. Justice about the letter she received from Captain Raykovitz detailing the outcome of the IAD investigation; however, the trial court judge sustained a hearsay objection to this line of questioning.[3]

---

[3] Ms. Justice also testified that she sought medical treatment at Eastern Orthopedics Association a few days after the incident. She received physical therapy for four to six months **(Footnote continued on next page…)**

7

No further witnesses were called on behalf of Ms. Justice and her counsel rested. Trooper Lombardo then moved for judgment as a matter of law on sovereign immunity grounds, which the trial court denied.

Trooper Lombardo testified that he has been a trooper with the PSP for eight years, graduating from the PSP Academy in 2008. As part of the PSP Academy, he was instructed in the laws regarding arrests, how to arrest someone, and the PSP's use of force policy, which provides what you can and cannot do depending on the situation. He further testified that after graduating from the PSP Academy, troopers are placed on probationary status for a year during which time they work with two coaches, each for 30 days, who "show[] you the ropes per se and how to be a police officer." (R.R. at 211a.)

Trooper Lombardo stated that he was assigned to the patrol division in Philadelphia for seven years. His duties included patrolling the highways, enforcing the Vehicle Code[4] and pulling people over for violations, providing

---

**(continued…)**

and was on pain medications for several months. She produced an outstanding bill from Eastern Orthopedics Association in the amount of $8,933. She testified that her work was limited due to her physical therapy and pain in her wrist and arm, and she produced a chart she created that showed $9,095 worth of lost income due to missed hairstyling appointments. Ms. Justice admitted that she was in an accident on a SEPTA bus prior to 2011, for which she sought medical treatment for her neck and back. She also testified that she sought mental health services a few days after the incident with Trooper Lombardo because she was anxious and depressed and was not sleeping well. She saw Dr. Anita Gordan Bell, who had been her regular therapist for several years prior to this incident. She produced an outstanding bill from Dr. Bell in the amount of $1,750.

[4] 75 Pa.C.S. §§ 101 – 9805.

assistance to individuals whose cars broke down on the highway, and investigating crimes.

On the day in question, Trooper Lombardo was headed westbound on I-76 in full uniform in a marked patrol car when he observed a silver Chevy make a lane change without using its turn signal. He then "ran" the license plate and learned that the owner of the vehicle had a suspended driver's license. He pulled alongside the car and confirmed that the person driving matched the picture of the owner of the vehicle. He testified that he then got behind the car, turned on his emergency lights, and the driver pulled the vehicle to the right side of the highway.

Trooper Lombardo then testified that he approached the vehicle, identified himself and asked Ms. Justice for her driving credentials. He stated that Ms. Justice was standoffish and uncooperative, he had to ask her multiple times for her credentials, and she was only able to provide a driver's license. He testified that he told Ms. Justice that he had pulled her over for failure to use a turn signal and having a suspended license, to which she snapped why was her license suspended, and he responded that he was not sure and maybe she had failed to pay a fine from a previous ticket. He also told her that if she could get someone to drive her car away, he would not have it towed.

Trooper Lombardo stated that he returned to his patrol car and wrote out two tickets, returned to the passenger side of Ms. Justice's vehicle and explained to her how to respond to the tickets, but cautioned her that if she did not respond, a warrant would be issued for her arrest since her license was already

suspended. He stated that he felt like Ms. Justice was not listening to a word he said and that she wanted nothing to do with him. Trooper Lombardo stated that he asked Ms. Justice if she had gotten in touch with someone to drive the car away. She said no, so he told her a tow truck would be en route. He attempted to give the tickets to Ms. Justice, but she refused to take them so he dropped them in her vehicle and returned to his patrol car.

After the tow truck arrived at the scene, Trooper Lombardo filled out the paperwork and returned to Ms. Justice's vehicle. He testified that he asked her to step out of the car but she refused, so he told her she could not sit in the car while it was being towed because it was a safety issue and against the law. Trooper Lombardo testified that Ms. Justice "was cursing [him] up and down," and after instructing her multiple times to get out of the car, he told her several times that if she did not get out of the car he would physically remove her. (R.R. at 213a.) Trooper Lombardo stated that Ms. Justice then finally got out of the car and continued to curse at and insult him, and that he was taken aback by her statements.

Trooper Lombardo testified that he asked Ms. Justice if she was coming with him so he could take her off the highway to a safe location, to which she said, "I'm not F'ing going with you," and she moved to the other side of the concrete barrier. (*Id.*) Ms. Justice kept saying that her ride was at the next exit and just needed to turn around, but Trooper Lombardo did not believe her because it was taking too long. He testified that standing on the side of the highway with cars flying by was a safety issue and I-76 was a very dangerous road, and he wanted to

put Ms. Justice in his patrol car and drive her to a safe location away from the busy highway. Trooper Lombardo testified that he repeatedly asked where her ride was but Ms. Justice ignored him, so he eventually told her they had to get off the highway right now because it was not safe. Ms. Justice again ignored him, so he went over the concrete barrier and grabbed her arm to bring her back to his patrol car. Trooper Lombardo testified that at that point, Ms. Justice started to resist him and was fighting him, but he was eventually able to handcuff her. Right after Ms. Justice was handcuffed, her ride arrived and he allowed her and her stepson to leave the scene.

Trooper Lombardo further testified that it took approximately 50 minutes between the initial traffic stop and the time when Ms. Justice's ride arrived. When asked why he did not just drive away after Ms. Justice and her stepson were out of the vehicle on the other side of the barrier, Trooper Lombardo testified:

> I mean, I just – I towed her vehicle. I think it would be irresponsible as a police officer if you just tow somebody's car to leave them on the side of one of the busiest highways in, really, America. If something would have happened to her I feel like I would be liable for it. I've been trained that if you . . . come in contact with someone on the highway, you take them off the highway for their safety. The highway – it's a dangerous place.

> Same thing if you tow somebody's car. You're not just going to leave them on the side of the highway. I was trained to take this person to a place of safety and that is all I wanted to do.

(R.R. at 215a.)

On cross-examination, Trooper Lombardo admitted that a video from his patrol car for the incident no longer existed because it was erased after 45 days pursuant to standard PSP procedure. Trooper Lombardo stated that he told Ms. Justice that they needed to get off the highway, but he did not recall telling her that PSP policy required him to remove her from the highway. He testified that he intended to handcuff the stepson, too, but did not get the chance to do so before their ride arrived at the scene. He also explained that before he removed her handcuffs, he told Ms. Justice to stop acting like an animal because he wanted to make sure she was calm and had her emotions under control.

PSP Corporal Derek Watford (Cpl. Watford) testified that he has been with the PSP since 1993, is currently assigned to the Belmont barracks, and is familiar with the rules governing patrol for state troopers. Cpl. Watford testified that when a car is towed from a limited access highway by a trooper during a traffic stop, the trooper cannot leave the car's occupants on the side of the highway and must transport them to a place of safety. Cpl. Watford further testified that pursuant to Section 7-2 of the PSP's Field Regulations Manual, which was admitted into evidence, anyone transported in a PSP vehicle "shall be searched, patted down for weapons and handcuffed for the safety of the [trooper] as well as the individual being transported." (R.R. at 230a.)[5, 6]

---

[5] We note that the trial court sustained an objection, on grounds of hearsay and relevance, to Trooper Lombardo testifying about the results of the IAD investigation into Ms. Justice's complaint. The trial court similarly precluded Cpl. Watford from testifying about the IAD **(Footnote continued on next page…)**

12

Trooper Lombardo then rested and made a motion for a directed verdict on grounds of sovereign immunity, which the trial court denied. The jury returned a verdict in favor of Ms. Justice on all of her claims and awarded her a lump sum of $160,000.

Trooper Lombardo then filed a motion for post-trial relief seeking judgment notwithstanding the verdict (JNOV) or a new trial. He again argued that the claims against him were barred as a matter of law on sovereign immunity grounds. In the alternative, he argued that he was entitled to a new trial because the trial court made improper evidentiary rulings that prevented him from developing his scope of employment argument, charged the jury incorrectly, and the damages awarded against him was unsupported and grossly excessive. The trial court denied his motion and this appeal followed.[7]

---

**(continued…)**

investigation or giving his opinion regarding whether Trooper Lombardo followed PSP policy during the encounter with Ms. Justice.

[6] We also note that in his closing argument, counsel for Ms. Justice provided the jury with a formula for calculating her non-economic damages, to which Trooper Lombardo's counsel did not object. The trial court rejected Trooper Lombardo's suggested standard jury instruction regarding scope of employment and refused to add his requested language to the instruction. The trial court also instructed the jury that its verdict need not be unanimous, but at least six out of eight of the jurors had to agree on each issue. Trooper Lombardo failed to object to the charge and he does not raise this issue on appeal.

[7] On appeal from a decision of a trial court denying a motion for judgment notwithstanding the verdict, this Court's scope of review "is limited to a determination of whether the trial court abused its discretion, or committed an error of law controlling the outcome of the case." *Cheng v. SEPTA*, 981 A.2d 371, 374 (Pa. Cmwlth. 2009).

13

**III.**

Trooper Lombardo's main argument on appeal is that he acted within the scope of his employment as a trooper with the PSP when he handcuffed Ms. Justice after pulling her over for traffic violations. Therefore, he is entitled to sovereign immunity on the intentional tort claims against him and the trial court erred in denying his JNOV motion. We agree.

Pursuant to Article I, Section 11 of the Pennsylvania Constitution, the General Assembly declared that "the Commonwealth, and its officials and employees *acting within the scope of their duties*, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." 1 Pa. C.S. § 2310 (emphasis added).[8] A Commonwealth employee (such as a PSP trooper) acting within the scope of his employment or duties is protected from the imposition of liability for intentional tort claims by sovereign immunity. *Holt v. Northwest Pennsylvania Training Partnership Consortium, Inc.*, 694 A.2d 1134, 1140 (Pa. Cmwlth. 1997) (citing *LaFrankie v. Miklich*, 618 A.2d 1145 (Pa. Cmwlth. 1992)). Moreover, "[u]nlike for local agency employees, willful misconduct does not

---

[8] "The General Assembly, pursuant to section 11 of Article I of the Constitution of Pennsylvania, does hereby waive, in the instances set forth in subsection (b) only . . . sovereign immunity as a bar to an action against **Commonwealth parties**, for damages arising out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity." 42 Pa .C.S. § 8522(a) (emphasis added). A "Commonwealth party" is defined as a Commonwealth agency and any **employee thereof**, but only with respect to an act **within the scope of his office or employment**. 42 Pa. C.S. § 8501 (emphasis added). None of the nine exceptions to sovereign immunity provided in 42 Pa. C.S. § 8522(b) are applicable to this case.

14

vitiate a Commonwealth employee's immunity because sovereign immunity protects a Commonwealth employee acting within the scope of his or her employment from liability, even for intentional acts which cause emotional distress." *Holt*, 694 A.2d at 1140 (citations omitted).

The only claims Ms. Justice asserts against Trooper Lombardo were intentional tort claims. The key issue, then, in determining whether Trooper Lombardo is entitled to immunity is whether he was acting within the scope of his employment during his encounter with Ms. Justice. In making that determination, in *Natt v. Labar*, 543 A.2d 223 (Pa. Cmwlth. 1988), we essentially adopted the Restatement (Second) of Agency (1958), § 228[9] standard to determine when an employee is acting within his or her scope of employment, stating:

> Conduct of an employee is within the scope of employment if it is of a kind and nature that the employee is employed to perform; it occurs substantially within the authorized time and space limits; it is actuated, at least in part, by a purpose to serve the employer; and if

---

[9] In setting forth that standard, we cited to *Fitzgerald v. McCutcheon*, 410 A.2d 1270 (Pa Super. 1979), which relied on this provision to define scope of employment. The Restatement (Second) of Agency (1958), § 228, defines conduct within the scope of employment as follows:

> (1) Conduct of a servant is within the scope of employment if, but only if: (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master; and (d) if force is intentionally used by the servant against another, the use of the force is not unexpectable by the master. (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

15

force is intentionally used by the employee against another[,] it is not unexpected by the employer.

*Id.* at 225. *See also Minor v. Kraynak*, 155 A.3d 114, 122 (Pa. Cmwlth. 2017) (quoting *Natt*, 543 A.2d at 225).

Trooper Lombardo contends that he was acting within the scope of his employment because when he pulled Ms. Justice over, he was doing exactly what he is employed to do. He was patrolling the Schuylkill Expressway and, in so doing, he took various measures to enforce the Vehicle Code and ensure public safety. Moreover, his interaction with Ms. Justice occurred within "authorized time and space limits" because there is no question that he was: on duty, in uniform, driving a State Police vehicle on a road he was authorized to patrol at that time, which was consistent with, and was intended to serve, the interests of his employer, the Pennsylvania State Police.

While all of that may be true, Ms. Justice argues that Trooper Lombardo was acting outside his authority because the use of force by placing Ms. Justice's hands behind her back and "wrestling" with her to apply handcuffs was completely unacceptable and completely gratuitous, excessive or unreasonably motivated by his personal anger and he was not acting within the scope of his employment because he was not acting in the PSP's interest.

Section 229(1) of Restatement (Second) of Agency (1958) provides that to be "within the scope of the employment, conduct must be of the same

16

general nature as that authorized, or incidental to the conduct authorized."[10] Under this standard, we do not look to see whether particular conduct was exercised in a negligent manner or even if that person intentionally caused the harm, but only to whether the conduct was authorized by the employer. Remember, normally this standard is used to determine whether the employer is liable for the conduct of its employee. If an employee was not considered acting within the scope of employment when the employee's conduct was negligent or intentionally tortious,

---

[10] Restatement (Second) of Agency (1958) § 229(2) outlines standards to determine whether **unauthorized conduct** is nevertheless within the scope of employment as sufficiently similar to or incidental to authorized conduct. Under this provision, courts are to consider:

> (a) whether or not the act is one commonly done by such servants;
>
> (b) the time, place and purpose of the act;
>
> (c) the previous relations between the master and the servant;
>
> (d) the extent to which the business of the master is apportioned between different servants;
>
> (e) whether or not the act is outside the enterprise of the master or, if within the enterprise, has not been entrusted to any servant;
>
> (f) whether or not the master has reason to expect that such an act will be done;
>
> (g) the similarity in quality of the act done to the act authorized;
>
> (h) whether or not the instrumentality by which the harm is done has been furnished by the master to the servant;
>
> (i) the extent of departure from the normal method of accomplishing an authorized result; and
>
> (j) whether or not the act is seriously criminal.

an employer would never be liable for the negligent or intentional torts of its employees. To the contrary, Section 231 of the Restatement (Second) of Agency (1958) specifically provides that acts may be within the scope of employment even if consciously criminal or tortious.

In this case, the conduct complained of was of the "same general nature as that authorized, or incidental to the conduct authorized." Restatement (Second) of Agency (1958) § 229(1). The PSP directed Trooper Lombardo to enforce all the laws of the Commonwealth including those "regulating the use of the highways of this Commonwealth . . . ." Section 710(g) of the Administrative Code of 1929 (Code), Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. § 250(g). The PSP also authorized him to make warrantless arrests "for all violations of the law, including laws regulating the use of the highways, which they may witness . . . ." Section 7129(a) of the Administrative Code of 1929, *as amended*, 71 P.S. § 252(a). The PSP, in general, also empowers Trooper Lombardo to use force where necessary to carry out those purposes, so the use of force by a police officer in carrying out his duties is not unexpected. Trooper Lombardo was on duty, in uniform, driving a State Police vehicle, and enforcing the laws of Pennsylvania. Whether his conduct was reasonable or not, intentional or not, tortious or not, carried out for an improper motive or not, are all irrelevant because Trooper Lombardo's use of force in placing Ms. Justice's hands behind her back and "wrestling" with her to apply handcuffs was of the same general nature as that authorized or incidental to the conduct authorized, and use of force, in general, by State Troopers is not unexpected.

18

Looking at the evidence in the light most favorable to Ms. Justice, the record demonstrates that Trooper Lombardo was acting within the scope of his employment and the trial court committed an error of law in denying his JNOV motion.[11]

Accordingly, the decision of the trial court is reversed and the matter is remanded with instructions that the trial court enter judgment in favor of Trooper Lombardo.

_____
DAN PELLEGRINI, Senior Judge

---

[11] Given the way we resolve this case, we need not reach the additional arguments raised by Trooper Lombardo in his brief that: the trial court's inconsistent, illogical, improper rulings regarding what witnesses could testify about impaired Trooper Lombardo's ability to develop his immunity defense; the scope of employment instruction to the jury was tainted and prejudicial to Trooper Lombardo; and the jury's damages award was unsupported and excessive, thus warranting a new trial on damages.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Shiretta Justice          :
                              :
        v.            :  No. 1439 C.D. 2016
                              :
Pennsylvania State Police Trooper  :
Lombardo,           :
              Appellant   :

# **O R D E R**

AND NOW, this 14th day of November, 2017, the order of the Court of Common Pleas of Philadelphia County (trial court) denying Pennsylvania State Police Trooper Lombardo's (Appellant) motion for judgment notwithstanding the verdict is reversed, and the matter is remanded to the trial court to enter judgment in favor of Appellant.

Jurisdiction relinquished.

_____
DAN PELLEGRINI, Senior Judge