[J-106-2018] [MO: Donohue, J.]

# IN THE SUPREME COURT OF PENNSYLVANIA
## EASTERN DISTRICT

| | | |
|---|---|---|
| SHIRETTA JUSTICE, | : | No. 17 EAP 2018 |
| | : | |
| Appellant | : | Appeal from the Order of |
| | : | Commonwealth Court entered on |
| | : | 11/14/2017 at No. 1439 CD 2016 |
| v. | : | reversing the Order entered on |
| | : | 07/19/2016 in the Court of Common |
| | : | Pleas, Philadelphia County, Civil |
| PENNSYLVANIA STATE POLICE | : | Division at No. 1729 September Term |
| TROOPER LOMBARDO, | : | 2014. |
| | : | |
| Appellee | : | ARGUED: December 6, 2018 |

## DISSENTING OPINION

**JUSTICE MUNDY**                                                    **DECIDED: May 31, 2019**

I agree with the Commonwealth Court that Trooper Lombardo was acting within the scope of his employment and was immune from liability under the doctrine of sovereign immunity. Because I would affirm the Commonwealth Court's judgment, I respectfully dissent.

As noted by the Majority, the application of the Restatement (Second) of Agency (1958), which we have adopted for analysis of the question of scope of employment issues in the vicarious liability context, is an "awkward" fit in the sovereign immunity context. *See* Majority Op. at 17. Sovereign immunity issues implicate potentially distinct separation of powers and jurisdictional concerns.

> The constitutionally-grounded, statutory doctrine of sovereign immunity obviously serves to protect government policymaking prerogatives and the public fisc. To a degree, it has been tempered to recognize the rights and interests of those who may have been harmed by government actors . . . . Understandably, some immunity applications may be

distasteful to those who may discern government wrongdoing . . . . In light of the constitutional basis for the General Assembly's allocation of immunity, however, the area implicates the separation of powers among the branches of government also crafted by the framers. Thus, in absence of constitutional infirmity, courts are not free to circumvent the Legislature's statutory immunity directives pertaining to the sovereign.

*Scientific Games Int'l., Inc. v. Com.*, 66 A.3d 740, 755 (Pa. 2013) (footnotes and internal citation omitted). In *Scientific Games,* we also remarked that "[a] more general clarification of the relationship between sovereign immunity and jurisdiction may be appropriate in the arena at large." *Id.* at 756. To date, this court has not engaged in such an inquiry, and the present case does not afford an opportunity to do so. Nevertheless, it bears acknowledging that courts must be reticent to diminish the scope of sovereign immunity as expressed by the Legislature in its enactments. To that end, we have held any exceptions authorized by the Legislature must be strictly construed. *Jones v. Southeastern Pa. Transp. Auth.*, 772 A.2d 435, 440 (Pa. 2001).

The Legislature has re-avowed the Commonwealth's sovereign immunity, subject only to certain specific enumerated exceptions not applicable here.

### § 2310. Sovereign immunity reaffirmed; specific waiver

Pursuant to section 11 of Article 1 of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and *employees acting within the scope of their duties*, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity. . . .

Pa.C.S.A. § 2310 (emphasis added). It is not contested that State Police troopers are employees protected by sovereign immunity. *See La Frankie v. Miklich*, 618 A.2d 1145, 1148 (Pa. Cmwlth. 1992). Thus, the limiting factor for the applicability of sovereign

immunity in this case is whether Trooper Lombardo was acting within the scope of his employment.[1] Therefore, although we employ the concepts of the Restatement to analyze scope-of-employment issues, consistent with our strict interpretation of statutory exceptions we must also strictly construe the Restatement's scope-of-employment requirements in the sovereign immunity paradigm.

As expressed by the Commonwealth Court and the Majority, Section 228 of the Restatement defines when an employee's conduct is within the scope of his or her employment.

> (1) Conduct of a servant is within the scope of employment if, but only if:
>
> (a) it is of the kind he is employed to perform;
>
> (b) it occurs substantially within the authorized time and space limits;
>
> (c) it is actuated, at least in part, by a purpose to serve the master, and
>
> (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.
>
> (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

---

[1] [F]or practical purposes under Pennsylvania law, there are two ways to overcome sovereign immunity. First, the legislature has waived sovereign immunity by statute in nine specific areas. 42 Pa. Cons. Stat. § 8522(b) (listing the nine exceptions to sovereign immunity). Second, sovereign immunity does not protect Commonwealth employees acting outside the course and scope of their employment.

*Sarin v. Magee*, 333 F.Supp.3d 475, 481 (E.D. Pa. 2018).

Restatement (Second) of Agency § 228 (1958).

The Commonwealth Court reviewed the evidence in the case, adhering to its standard of review of a trial court's denial of a motion for JNOV. *Justice v. Lombardo*, 173 A.3d 1230, 1237 n.7, 1239 (Pa. Cmwlth. 2018). It found that the evidence demonstrated Trooper Lombardo's actions were incidental to his authority to "enforce all laws of the Commonwealth including those 'regulating the use of the highways of this Commonwealth . . . .'" *Id.* at 1239. Accordingly, it concluded the trial court committed an error of law in denying Trooper Lombardo's motion for JNOV.

There is no dispute, that Trooper Lombardo was authorized to stop Ms. Justice and cite her for violations of the Vehicle Code. Additionally, Ms. Justice's conduct in operating the vehicle with a suspended driver's license created a traffic safety hazard in that the removal of her vehicle from a busy limited access highway was necessitated. Under the Vehicle Code, police officers are authorized to direct traffic, and individuals of the public are obligated to obey lawful orders and directions by such officers. *See* 75 Pa.C.S. §§ 3102, 3111.[2] Instantly, Trooper Lombardo initially suggested to Ms. Justice

---

[2] The Vehicle Code provides:

### § 3102. Obedience to authorized persons directing traffic

No person shall willfully fail or refuse to comply with any lawful order or direction of:

(1) any uniformed police officer, sheriff or constable or, in an emergency, a railroad or street railway police officer[.]

75 Pa.C.S. § 3102(1).

### § 3111. Obedience to traffic-control devices

**(a) General rule.--***Unless otherwise directed by a uniformed police officer* or any appropriately attired person authorized to direct, control or regulate traffic, the driver of any vehicle shall

that she could contact a licensed driver to come and retrieve the vehicle. After processing the citations, no driver having arrived, Trooper Lombardo arranged for the vehicle to be towed. After the arrival of the tow truck, again with no driver having appeared on the scene, Trooper Lombardo directed Ms. Justice to enter his patrol vehicle to transport her to a place of safety. Ms. Justice refused, pleading with Trooper Lombardo to wait longer for the licensed driver to arrive. Thereupon, Trooper Lombardo physically subdued and handcuffed Ms. Justice.[3]

While there concededly are conflicting accounts regarding the manner in which Trooper Lombardo performed his duties, these disparities in narratives do not implicate the scope of employment at issue in this case. It is true that authorized conduct by an employee may be outside the scope of employment if **entirely** motivated to serve a private end. "An act of a servant is not within the scope of employment if it is done with no intention to perform it as a part of or incident to a service on account of which he is

> obey the instructions of any applicable official traffic-control device placed or held in accordance with the provisions of this title, subject to the privileges granted the driver of an emergency vehicle in this title.

*Id.* § 3111 (emphasis added).

[3] The Majority and Concurrence make much of the fact that Ms. Justice was behind the Jersey barriers at the time Trooper Lombardo requested her to enter his patrol car, and that the citations occasioning the initial stop had been issued. Maj. Op. at 24, 25 n. 16. Neither of these circumstances is relevant to the inquiry. Trooper Lombardo would not have been obligated to remain on the scene after the tow truck removed the vehicle, in order to accommodate Ms. Justice's wish to wait for the arrival of the people she had asked to provide her transportation. Additionally, leaving her unaccompanied and without the emergency lights of his vehicle at the scene for her to await pickup on I-76, a busy, limited-access highway where pedestrians are prohibited would have been problematic. His direction to her to enter his vehicle for transportation to a place of safety was authorized and served the safety mission of his employer. Ms. Justice's refusal was contrary to Section 3102 of the Vehicle Code. That she was not ultimately cited for her refusal, is also immaterial.

employed." Restatement (Second) of Agency § 235 (1958). However, where, as here, such intent must be discerned from the actions themselves and "the servant . . . does the kind of act which he is authorized to perform within working hours and at an authorized place, **there is an inference that he is acting within the scope of employment**." *Id.* cmt. a (emphasis added).

Under these facts, viewed in the light most favorable to Ms. Justice, the Commonwealth Court correctly concluded there was no factual dispute that the four scope-of-employment elements of Section 228 of the Restatement had been met.[4] Trooper Lombardo's actions were of the kind he is employed to perform; he performed them within an authorized time and location; they were actuated at least in part to serve the interest of the State Police in performing their duty to monitor traffic safety, and use of force by troopers in performing these duties is not unexpected by the State Police.

The Majority characterizes the Commonwealth Court's conclusion, that as long as a trooper's use of force is incidental to authorized conduct it is within the scope of employment, as "expansive." Maj. Op. at 22. To the contrary, I believe the Commonwealth Court's conclusion is consistent with the language of Section 228 of the Restatement, which requires only that actions be authorized and performed "at least in part" in the service of the employer's purpose. Rather, it is the Majority that undermines the reach of sovereign immunity by reducing scope-of-employment inquiries to jury questions on the wisdom and propriety of a state trooper's decisions in the performance

---

[4] The Restatement identifies additional criteria for determining when unauthorized actions may nevertheless be deemed within an employee's scope of employment. *See* Restatement (Second) of Agency § 229 (1958) (enumerating factors for consideration when an action is unauthorized but may be of the same nature as an authorized action); *id.* § 230 (noting expressly forbidden acts may be within the scope of employment when such acts may be anticipated in achieving a required goal); *id* § 231 (noting even consciously criminal or tortious conduct may be within the scope of employment). These sections do not come into consideration where, as here, the actions in question are authorized.

of his or her duties. The Majority and Concurrence skew the focus from the connection between a trooper's action and his or her authorized duty, to an examination into subjective motive, wisdom, necessity, and ultimate effect of those actions.

The consequence of the Majority's decision today will be to introduce a chilling effect on troopers performing their duties. Rather than strictly construing limitations on exceptions to sovereign immunity, the Majority broadly construes a jury's role in determining what circumstances may be considered outside the scope of employment based on little more than subjective allegations of private motivations on the part of a trooper in the performance of his or her duties. In doing so, the Majority undermines the role of the legislature in defining the extent to which sovereign immunity shall apply.

Accordingly, I respectfully dissent.