IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Margaret Mazur,                        :
                Appellant       :
                                :   No.  1008 C.D. 2017
            v.                     :
                                :   Submitted:  December 15, 2017
Jamie Cuthbert                         :

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION BY
JUDGE McCULLOUGH                            FILED:  April 16, 2018

Margaret Mazur (Mazur) appeals, *pro se*, from the April 7, 2017 order of the Court of Common Pleas of Allegheny County (trial court) sustaining the preliminary objections filed by Jamie Cuthbert (Cuthbert) and dismissing Mazur's amended complaint with prejudice.  Mazur alleged in her amended complaint that Cuthbert unlawfully caused her injuries and damages due to publication of harmful defamatory statements that Cuthbert knew to be false.

**Facts and Procedural History**

Mazur and Cuthbert are both employed by the Commonwealth's Department of Military and Veterans Affairs (Department).  (Trial court op. at 1.)  Both Mazur and Cuthbert worked at the Department's Southwestern Veterans Center

(Center). (Complaint at 1-2.)[1] Mazur had been employed for four years as an accounting assistant and Cuthbert was employed as a human resources analyst 2. *Id.* On May 16, 2016, Mazur went to the bank and withdrew $4,700.00 in cash for use by the Center's residents. (Amended Complaint, Attachment 1.B.)[2] Mazur had performed this duty on past occasions, as it was part of her normal work duties. After placing the cash in a bank bag, Mazur drove back to the Center without making any stops. *Id.* She placed the bag on the desk chair of her co-worker, accounting assistant Sharon Warden (Warden). *Id.* When Warden returned to her desk, she and Mazur counted the money in the bank bag and discovered that the bag only contained $4,200.00; after an exhaustive search, neither Warden nor Mazur could locate the missing $500.00. *Id.*

The Center initiated an investigation, which included a pre-disciplinary conference with Mazur on May 26, 2016, to determine if the missing money had been stolen or lost because of any carelessness, neglect, or indifference on Mazur's part. (Statement of Facts, Attachment 2.)[3] Kim Kreiser (Kreiser), the Center's Chief of Employee Relations, was present at this conference. Mazur admitted at this conference that she left the bank bag unattended on Warden's chair but insisted that the door to the accounting office was closed at all times. She indicated her belief that the money had been stolen by either the bank manager or Warden. Nevertheless, the issue remained unresolved after the conference and Mazur was suspended without pay pending the outcome of a more thorough investigation. (Amended Complaint, Attachment 1.D.)

---

[1] The term "Complaint" above refers to a complaint filed by Mazur against Cuthbert with the trial court alleging that Cuthbert made harmful defamatory statements regarding her character that she knew to be false. The complaint is included in the original record.

[2] The amended complaint with multiple attachments is also included in the original record.

[3] The term "Statement of Facts" refers to a statement of facts and issues filed by Mazur with the trial court and included in the original record.

The Center never recovered the missing funds, nor did it determine who took the funds or how the funds were taken. (Amended Complaint, Attachment 1.B.)

Mazur filed a grievance with respect to her unpaid suspension, and pursuant to a settlement agreement (Agreement) reached between Jennifer McClain-Miller (McClain-Miller), a Labor Relations Analyst for the Center, and Mazur's bargaining representative, the American Federation of State, County & Municipal Employees, Local 2207, Mazur received a time-served, eight-day suspension from May 27, 2016, through June 7, 2016, with a final warning that any further infractions/offenses would result in her termination. (Amended Complaint, Attachments 1.I and 1.K.) Mazur returned to work on June 13, 2016, at which time Cuthbert presented her with a written copy of the Agreement and asked her to sign a form acknowledging her receipt of the same. (Amended Complaint, Attachment 1.C.) However, Mazur refused to sign the acknowledgement because of the final warning language. *Id.* Cuthbert then called McClain-Miller and informed her of Mazur's refusal to sign, at which time McClain-Miller advised Mazur that the final warning was part of the Agreement. *Id.*

**Unemployment Compensation Claim**

In the meantime, Mazur had filed a claim for unemployment compensation benefits in an attempt to recover the income she had lost because of her unpaid suspension. (Amended Complaint, Attachment 1.E.) Mazur's claim was denied by notice of determination mailed June 17, 2016, *id.*, but it erroneously stated that Mazur had last worked for the Center on May 25, 2016, and had been discharged

for dishonesty related to theft of money from her department.[4] *Id.* Mazur's original complaint against Cuthbert alleging defamation attributed these same erroneous statements to Cuthbert. *See* Complaint at 3.

**Original Complaint**

More specifically, in this original complaint, which was incorporated into Mazur's amended complaint in its entirety, Mazur alleged that Cuthbert made knowingly false and defamatory statements regarding her purported theft and dishonesty to her superiors, including Kreiser and McClain-Miller, and to an unemployment compensation representative. Mazur noted that Cuthbert was aware of both a police and internal investigation, neither of which made such findings. In so doing, Mazur alleged that Cuthbert was acting outside the scope of her duties as a human resources analyst for the Center. (Complaint at 3-4.)

Mazur's original complaint placed heavy emphasis on the findings set forth by the unemployment compensation representative in the notice of determination denying her claim. Mazur alleged that the erroneous findings of fact contained therein were based upon statements relayed by Cuthbert to the unemployment compensation representative. Mazur described these statements as libelous on their face and stated that the same resulted in a loss of income, a loss of her reputation, shame, mortification, and hurt feelings. Additionally, Mazur alleged that these false statements resulted in an unjust final warning letter which placed her job and future employment in jeopardy. Mazur further alleged that the statements were not privileged because they were

---

[4] Mazur appealed and the matter was assigned to a referee. The referee conducted a hearing on July 27, 2016, at which no representative from the Center appeared, and the referee ultimately reversed the notice of determination and awarded Mazur benefits. (Amended Complaint, Attachment 1.M.)

4

published by Cuthbert with malice and ill will toward her, with an intent to injure, but without any proof to substantiate the same. Mazur sought compensatory and punitive damages, as well as interest and the costs of filing this suit. (Complaint at 4-8.)

**Preliminary Objections and Amended Complaint**

Cuthbert filed preliminary objections in the nature of a demurrer and to dismiss Mazur's suit on the basis that Cuthbert, as an employee of the Commonwealth acting within her official duties, was immune from suit under 1 Pa.C.S. §2310.[5] Cuthbert noted that no waiver of immunity is applicable to her in this instance.[6] Cuthbert also filed a demurrer and sought to dismiss Mazur's suit on the basis that she enjoyed an absolute privilege for the statements allegedly made. More specifically, Cuthbert noted that a witness who presents testimony or other information in the course of a proceeding is entitled to an absolute privilege and that such privilege has been extended to cover pertinent and material statements made during the regular course of state agency proceedings, citing *Milliner v. Enck*, 709 A.2d 417, 420-21 (Pa. Super.

---

[5] This section provides, in pertinent part, as follows:

> Pursuant to section 11 of Article I of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity.

1 Pa.C.S. §2310.

[6] The General Assembly has set forth exceptions to sovereign immunity in section 8522 of what is commonly referred to as the Sovereign Immunity Act, 42 Pa.C.S. §8522. Section 8522(b), 42 Pa.C.S. §8522(b), identifies nine specific exceptions, none of which are applicable herein, relating to vehicle liability, medical-professional liability, personal property, real estate, potholes, animals, liquor store sales, National Guard activities, and toxoids and vaccines.

1998) (holding that statements made to unemployment compensation representative were absolutely privileged from liability for defamation). (Preliminary Objections, February 15, 2017.)

By order dated March 3, 2017, the trial court sustained Cuthbert's preliminary objections and dismissed Mazur's complaint, without prejudice to file an amended complaint within 30 days properly alleging facts supporting her contention that the defamatory statements were made outside the scope of Cuthbert's employment.

On March 9, 2017, Mazur filed an amended complaint with numerous attachments, including, *inter alia*, copies of a police report indicating no arrests were made, a statement from McClain-Miller, her suspension letter, the notice of determination regarding her claim for unemployment compensation benefits, a statement from Mazur's representative at the unemployment compensation referee's hearing, the Center's Funds Management Policy, and Cuthbert's formal job description. Mazur alleged that these attachments provided "clear and convincing evidence and proof that [Cuthbert] was acting in her personal capacity with willful and intentional motives to harm [Mazur] and was not acting within the scope of her employment or furthering [the Center's] interests" when she made the statements. (Amended Complaint at 4.) More specifically, Mazur alleged that Commonwealth employees had a duty under the Public Official and Employee Ethics Act, 65 Pa.C.S. §§1101-1113, to "display honesty and integrity in the performance of their duties." (Amended Complaint at 7.) Mazur also cited to the values and standards required of Commonwealth employees under the Governor's Code of Conduct. *Id.*

Cuthbert thereafter renewed her preliminary objections in the nature of a demurrer and sought dismissal of Mazur's suit on the basis of immunity and absolute privilege. By order dated April 10, 2017, the trial court sustained Cuthbert's

preliminary objections and dismissed Mazur's amended complaint with prejudice. Mazur then filed a notice of appeal with the trial court.

**Trial Court Opinion**

On May 12, 2017, the trial court issued an opinion in support of its order. In this opinion, the trial court explained that even accepting the allegations of Mazur's amended complaint as true, Mazur fails to set forth a claim against Cuthbert because Cuthbert is protected by sovereign immunity. Citing *Yakowicz v. McDermott*, 548 A.2d 1330, 1333 (Pa. Cmwlth. 1988), *appeal denied*, 565 A.2d 1168 (Pa. 1989), the trial court noted that Commonwealth parties, which includes an employee like Cuthbert, are immune to the imposition of liability for actions taken within the scope of their duties except where the General Assembly has waived such immunity.[7] The trial court also noted that defamation was an intentional tort,[8] but that "Commonwealth employees do not lose their immunity for intentional torts, provided they are acting within the scope of their employment." (Trial court op. at 2) (citing *Ioven v. Nestel*, 150 A.3d 571, 574 (Pa. Cmwlth. 2016), *appeal denied*, 169 A.3d 569 (Pa. 2017)).

While Mazur alleged that Cuthbert's alleged false and defamatory communications were outside the scope of her employment as a human resources analyst 2 for the Center, the trial court referenced the duties of such a position, as set forth in an exhibit attached to Mazur's amended complaint, which included conducting and assisting in pre-disciplinary conferences; collecting disciplinary investigation

---

[7] The trial court noted that the common pleas court in *Yakowicz* held that the act of publishing a defamatory performance review did not fall under any of the nine exceptions to sovereign immunity under section 8522 of the Sovereign Immunity Act and, thus, the publisher was immune from the imposition of liability for defamation.

[8] *See Wilson v. Marrow*, 917 A.2d 357, 364 (Pa. Cmwlth. 2007).

7

witness statements; recommending discipline to the central office; and, most importantly, representing the agency at unemployment compensation hearings. (Amended Complaint, Attachment 1.G.)  This latter duty included investigating and preparing the case by gathering witness statements and termination packages, testifying, presenting materials and witnesses, and conducting cross-examination of witnesses.  *Id.*  In light of these duties, the trial court concluded that any statements made by Cuthbert to her superiors or to an unemployment compensation representative in conjunction with a hearing regarding Mazur's unemployment compensation claim "were clearly made within the scope of Cuthbert's employment with [the Center]." (Trial court op. at 3.)  "As an employee of a Commonwealth agency acting within the scope of her employment," the trial court held that Cuthbert was "protected by sovereign immunity from the imposition of liability for defamation in the present matter."  *Id.*

### Discussion

On appeal to this Cout,[9] Mazur argues that the trial court erred in sustaining Cuthbert's preliminary objections because (1) Cuthbert's claim of immunity should have been raised as an affirmative defense under the heading of new matter in an answer to the amended complaint; (2) Cuthbert was not acting within the scope of her employment duties when she relayed false information to an unemployment

---

[9] Mazur originally appealed to the Superior Court.  However, by order filed June 8, 2017, the Superior Court transferred the matter to this Court.

8

compensation representative; and (3) Cuthbert was not eligible for any immunity as the false statements were made outside of the context of an unemployment compensation hearing and were in violation of the Center's own rules/policies.

**Affirmative Defense**

Mazur first argues that the trial court erred in sustaining Cuthbert's preliminary objections because, under Pa.R.C.P. No. 1030, Cuthbert's claim of immunity should have been raised as an affirmative defense under the heading of new matter in an answer to her amended complaint. In the course of this argument, Mazur also alleges that the trial court erred in failing to find Cuthbert in default status as she did not respond to the original complaint within the 20-day timeframe required by Pa.R.C.P. No. 1026.

Pa.R.C.P. No. 1026(a) provides that "every pleading subsequent to the complaint shall be filed within twenty days after service of the preceding pleading . . . ." The record herein indicates that Cuthbert was served with the original complaint on January 20, 2017. On February 13, 2017, Mazur served Cuthbert with a 10-day notice of her intent to seek entry of a default judgment under Pa.R.C.P. No. 237.5. Cuthbert immediately responded on February 15, 2017, with the filing of preliminary objections to the original complaint. Here, a period of 25 days had passed between the service of the original complaint and the filing of the preliminary objections. Generally, a party has 20 days to file a responsive pleading such as preliminary objections. *See* Pa.R.C.P. No. 1026 (stating that "every pleading subsequent to the complaint shall be filed within twenty days after service of the preceding pleading"). As such, the passage of more than 20 days could have resulted in the entry of a default judgment against Cuthbert.

Nevertheless, the trial court did not err in considering Cuthbert's preliminary objections since Mazur did not serve her original complaint on the Office of Attorney General, an absolute prerequisite to the entry of a default judgment against a Commonwealth party, *see Kreidie v. Commonwealth*, 156 A.3d 380, 383-84 (Pa. Cmwlth. 2017), and Mazur did not file an actual praecipe for the entry of a default judgment; instead, she merely provided Cuthbert with the 10-day notice required under Pa.R.C.P. No. 237.1(a)(2)(ii).[10]

---

[10] Pa.R.C.P. No. 237.1, entitled "Notice of Praecipe for Entry of Judgment of Non Pros for Failure to File Complaint or by Default for Failure to Plead," states as follows:

**(a) (1)** As used in this rule,

"judgment of non pros" means a judgment entered by praecipe pursuant to Rules 1037(a) and 1659;

"judgment by default" means a judgment entered by praecipe pursuant to Rules 1037(b), 1511(a), 3031(a) and 3146(a).

**(2)** No judgment of non pros for failure to file a complaint or by default for failure to plead shall be entered by the prothonotary unless the praecipe for entry includes a certification that a written notice of intention to file the praecipe was mailed or delivered

**(i)** in the case of a judgment of non pros, after the failure to file a complaint and at least ten days prior to the date of the filing of the praecipe to the party's attorney of record or to the party if unrepresented, or

**(ii)** in the case of a judgment by default, after the failure to plead to a complaint and at least ten days prior to the date of the filing of the praecipe to the party

Preliminary objections clearly qualify as a "pleading." *See* Pa.R.C.P. No.

1017(4).[11] Once Cuthbert's preliminary objections were filed, which occurred before

> against whom judgment is to be entered and to the party's attorney of record, if any.
>
> The ten-day notice period in subdivision (a)(2)(i) and (ii) shall be calculated forward from the date of the mailing or delivery, in accordance with Rule 106.
>
> **(3)** A copy of the notice shall be attached to the praecipe.
>
> **(4)** The notice and certification required by this rule may not be waived.
>
> **(b)** This rule does not apply to a judgment entered
>
> > **(1)** by an order of court,
> >
> > **(2)** upon praecipe pursuant to an order of court, or
> >
> > **(3)** pursuant to a rule to show cause.

Pa.R.C.P. No. 237.1(a)-(b). Pa.R.C.P. No. 237.5 merely sets forth the form of the notice of a praecipe to enter a default judgment.

[11] Pa.R.C.P. No. 1017(a) states that,

> Except as provided by Rule 1041.1, the pleadings in an action are limited to
>
> > (1) a complaint and an answer thereto,
> >
> > (2) a reply if the answer contains new matter, a counterclaim or a cross-claim,
> >
> > (3) a counter-reply if the reply to a counterclaim or cross-claim contains new matter,

11

the filing of a praecipe to enter a default judgment, she was no longer in default. *See Vision Service Plan v. Pennsylvania AFSCME Health & Welfare Fund*, 474 A.2d 339, 341 (Pa. Super. 1984) ("[A]lthough the filing of a responsive pleading may be late, if it is filed before the filing of a praecipe for judgment, it will nevertheless bar a default judgment.").[12] Even though Cuthbert's preliminary objections may have been untimely, the filing of the same would have precluded the entry of a default judgment against her. *See State Farm Insurance Company v. Barton*, 905 A.2d 993, 995 (Pa. Super. 2006) ("[A] defendant's filing of preliminary objections would inhibit the subsequent entry of a valid default judgment."). Moreover, this Court has previously noted that the 20-day pleading requirement has not been strictly enforced, that said rule is not mandatory but permissive, and that common pleas courts are afforded discretion in accepting late pleadings in the absence of prejudice and where justice so requires. *See Ramins v. Chemical Decontamination Corporation*, 560 A.2d 836, 839 (Pa. Cmwlth. 1989), *appeal denied*, 577 A.2d 893 (Pa. 1990). Thus, the trial court did not err in failing to find Cuthbert in default status.

Returning to the issue of whether Cuthbert's immunity defense should have been raised in new matter, Pa.R.C.P. No. 1030(a) does provide that immunity from suit is an affirmative defense that "shall be pleaded in a responsive pleading under the heading 'New Matter'."[13] However, "Pennsylvania courts have long recognized a

---

(4) **a preliminary objection** and a response thereto.

(Emphasis added).

[12] "While recognizing that decisions of our sister Superior Court are not binding upon this Court, we always give great deference to their persuasive wisdom and logic . . . ." *In re Superior-Pacific Fund*, 693 A.2d 248, 253 (Pa. Cmwlth.), *appeal denied*, 704 A.2d 1384 (Pa. 1997).

[13] Pa.R.C.P. No. 1030 provides, in full, as follows:

12

limited exception to this rule and have allowed parties to plead the affirmative defense of immunity as a preliminary objection where the defense is clearly applicable on the face of the complaint." *Feldman v. Hoffman*, 107 A.3d 821, 829 (Pa. Cmwlth. 2014), *appeal denied*, 121 A.3d 497 (Pa. 2015) (citations omitted); *see also Minor v. Kraynak*, 155 A.3d 114, 121 (Pa. Cmwlth. 2017) (noting the limited exception allowing immunity to be raised by preliminary objection as discussed in *Feldman* and concluding that any claim of procedural error was waived as a result of the plaintiff's failure to file preliminary objections to the preliminary objections that asserted such immunity). Here, Mazur had filed a complaint against a co-employee at the Center, clearly a Commonwealth employee, and the attachments to the amended complaint reflect that Cuthbert's job duties involved handling unemployment compensation claims on behalf of the Center, which included representing the Center at unemployment compensation hearings, investigating and preparing the Center's case by gathering witness statements and termination packages, testifying, presenting materials and witnesses, and cross-examining witnesses. Hence, the defense of

---

(a) Except as provided by subdivision (b), all affirmative defenses including but not limited to the defenses of accord and satisfaction, arbitration and award, consent, discharge in bankruptcy, duress, estoppel, failure of consideration, fair comment, fraud, illegality, **immunity from suit**, impossibility of performance, justification, laches, license, payment, privilege, release, res judicata, statute of frauds, statute of limitations, truth and waiver shall be pleaded in a responsive pleading under the heading "New Matter". A party may set forth as new matter any other material facts which are not merely denials of the averments of the preceding pleading.

(b) The affirmative defenses of assumption of the risk, comparative negligence and contributory negligence need not be pleaded.

(Emphasis added).

13

sovereign immunity was apparent on the face of the amended complaint. Thus, the exception applies and the trial court did not err in considering the sovereign immunity defense raised by Cuthbert via preliminary objections.

**Scope of Employment Duties**

Mazur next argues that the trial court erred in sustaining Cuthbert's preliminary objections because Cuthbert was not acting within the scope of her employment duties when she relayed false information to an unemployment compensation representative.

Section 8501 of the Sovereign Immunity Act defines the term "Commonwealth party" broadly to include "[a] Commonwealth agency and any employee thereof, but only with respect to an act within the scope of his office or employment." 42 Pa.C.S. §8501. Hence, a Commonwealth employee may be held liable for conduct performed within the scope of his/her employment only in the narrow categories of cases for which the General Assembly has waived sovereign immunity under section 8522(b) of the Sovereign Immunity Act. As noted above, these categories relate to vehicle liability, medical-professional liability, personal property, real estate, potholes, animals, liquor store sales, National Guard activities, and toxoids and vaccines. Additionally, section 8522(a) of the Sovereign Immunity Act provides that said waiver of sovereign immunity is only applicable to "damages arising out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity." 42 Pa.C.S. §8522(a).

Mazur alleges that Cuthbert's actions fall under the personal property exception in section 8522(b)(3) of the Sovereign Immunity Act, 42 Pa.C.S.

14

§8522(b)(3), based upon Cuthbert's purported possession and control of her personnel files. We do not agree. This exception, entitled "Care, custody or control of personal property," provides for a waiver of immunity with respect to "[t]he care, custody or control of personal property in the possession or control of Commonwealth parties, including Commonwealth-owned personal property and property of persons held by a Commonwealth agency." *Id.* Mazur's amended complaint is premised on Cuthbert's intentional acts, and not any negligent acts, a prerequisite for the exception to apply under section 8522(a). Moreover, in order for this exception to apply, the personal property possessed or controlled by the Commonwealth party must directly cause, and not merely facilitate, the plaintiff's injuries. *Pennsylvania State Police v. Klimek*, 839 A.2d 1173, 1175 (Pa. Cmwlth. 2003), *appeal denied*, 857 A.2d 681 (Pa. 2004) (for exception to apply, "personal property *itself* must cause defendant's injuries, not merely facilitate it." (emphasis in original)). Here, Mazur's personnel file was not the cause of her alleged injuries; rather, it was the statements made by Cuthbert, statements which were made in the scope of her employment duties. Thus, the personal property exception is not applicable herein.

As the trial court aptly noted, defamation is an intentional tort, which does not fall within the General Assembly's limited waiver of sovereign immunity. *Ioven*; *Wilson*. In *Ioven*, Douglas Ioven, a former employee of the Southeastern Pennsylvania Transportation Authority (SEPTA), filed a complaint against SEPTA and its police chief, Thomas Nestel, alleging that Nestel had published and distributed an officer safety bulletin to various law enforcement agencies that contained false statements about Ioven.[14] Ioven alleged that Nestel knew or should have known that these

---

[14] The purported false statements included that Ioven had pointed a loaded firearm at a pedestrian, did not have a permit to carry a concealed weapon, and impersonated a police officer on several occasions.

statements were false, but admitted that they were made in the course and scope of Nestel's employment with SEPTA. Ioven's complaint included claims against Nestel for slander, defamation, libel, and intentional infliction of emotional distress,[15] as well as a claim that SEPTA was vicariously liable for Nestel's actions. The common pleas court ultimately sustained a motion from Nestel and SEPTA for judgment on the pleadings and dismissed Ioven's complaint with prejudice on the basis of sovereign immunity.

On appeal, this court affirmed. We noted that slander, defamation, and libel were not listed as exceptions to sovereign immunity under section 8522(b) of the Sovereign Immunity Act. Additionally, we rejected Ioven's arguments regarding an exception to immunity under section 8550 of the Judicial Code, 42 Pa.C.S. §8550, for acts constituting actual malice of willful misconduct. We noted that such an exception only applies to the immunity granted to local agency employees, not Commonwealth employees, and that the latter "do not lose their sovereign immunity protection for alleged claims of willful misconduct . . . provided they are acting within the scope of their employment." *Ioven*, 150 A.3d at 153-54. Because Ioven admitted in his complaint that Nestel was acting within the scope of his employment, we held that the common pleas court properly concluded that Nestel was protected by sovereign immunity.

Consequently, the only way for Mazur to succeed on her defamation action against Cuthbert would be to show that Cuthbert's statements were made outside the scope of her duties with the Center. This Court has previously explained that an

---

[15] Ioven's claim of intentional infliction of emotional distress was dismissed following the filing of preliminary objections on behalf of Nestel and SEPTA.

16

employee's conduct is within the scope of his/her employment if the conduct "is of a kind and nature that the employee is employed to perform; it occurs substantially within the authorized time and space limits; it is actuated, at least in part, by a purpose to serve the employer."[16] *Natt v. Labar*, 543 A.2d 223, 225 (Pa. Cmwlth. 1988). Further, "even debatable acts or acts contrary to policy, if done in furtherance of [the] employer's interest, do not exceed the employee's scope of employment." *Kull v. Guisse*, 81 A.3d 148, 158 (Pa. Cmwlth. 2013), *appeal denied*, 91 A.3d 163 (Pa. 2014).[17]

---

[16] This standard was adopted from the RESTATEMENT (SECOND) OF AGENCY §228 (1958), which provides as follows:

> (1) Conduct of a servant is within the scope of employment if, but only if:
>
> > (a) it is of the kind he is employed to perform;
> >
> > (b) it occurs substantially within the authorized time and space limits;
> >
> > (c) it is actuated, at least in part, by a purpose to serve the master, and
> >
> > (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.
>
> (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

[17] In *Kull*, we affirmed the orders of a common pleas court holding that certain faculty members of Kutztown University were immune from intentional tort claims brought against them by a former assistant professor who was denied tenure and a promotion. This denial was premised upon the recommended denial of tenure by the chair of the department where the former assistant professor worked and that department's promotion, evaluation, and tenure committee, which consisted of the faculty members that were defendants in the suit. The former assistant professor raised claims of defamation, invasion of privacy/false light, and intentional interference with contractual relations in

17

We explained in *Kull* that "governmental immunity for local agency employees does not protect against acts of willful misconduct,"[18] but that said exception "has no partner in the Sovereign Immunity Act." 81 A.3d at 154 n.5. In other words, we stated that "Commonwealth employees do not lose their sovereign immunity protection for alleged claims of willful misconduct." *Id.* In reaching our decision in *Kull*, we cited the RESTATEMENT (SECOND) OF AGENCY §230 (1958), which provides that "[a]n act, although forbidden, or done in a forbidden manner, may be within the scope of employment." *Id.* at 158. We also cited a decision from the United

---

his amended complaint, alleging that the committee members exceeded their scope of employment by failing to adhere to evaluation and tenure procedures set forth by the governing collective bargaining agreement. The amended complaint also alleged that the committee members failed to consider his work outside the department, did not return his peer evaluations in a timely manner, did not allow him an opportunity to discuss these evaluations before they were recorded, did not have an expert evaluate him, and included evaluation factors not specifically referenced in the collective bargaining agreements. The faculty members filed preliminary objections asserting sovereign immunity. The common pleas court sustained the same and this Court affirmed on appeal. We concluded that the trial court properly found the committee members acted within the course of their employment, and, hence, were entitled to immunity, as they were part of a committee whose primary duty was to evaluate professors for tenure, which included compiling evaluation information and making recommendations. Further, we noted that even if the assistant professor had alleged that the committee members acted with personal animosity against him, the result would not change because their actions were made to advance the university's interests.

[18] *See* Sections 8542(d) and 8550 of the Judicial Code, 42 Pa.C.S. §§8542(d), 8550 (relating to the willful misconduct exception to **governmental** immunity). As our Pennsylvania Supreme Court explained in *Dorsey v. Redman*, 96 A.3d 332, 340 (Pa. 2014), the doctrines of governmental immunity were designed "to protect the fiscal security of the government by shielding the Commonwealth and its agents, as well as local agencies, from tort liability," with the former shielding the Commonwealth and its agents and the latter shielding local governments, local agencies, and employees thereof.

States Court of Appeals for the Third Circuit, *Brumfield v. Sanders*, 232 F.3d 376 (3d Cir. 2000), *cert. denied*, 532 U.S. 958 (2001).[19]

This Court recently addressed a scope of employment issue in a case brought against a Pennsylvania State Police trooper for intentional tort claims arising out of a traffic stop. *Justice v. Lombardo*, 173 A.3d 1230 (Pa. Cmwlth. 2017). In that case, Shiretta Justice filed a complaint against Pennsylvania State Police Trooper Joseph Lombardo alleging that he used excessive force in restraining and handcuffing her, and asserting various intentional tort claims, including, *inter alia*, assault and battery, invasion of privacy, and intentional infliction of emotional distress. Trooper Lombardo filed preliminary objections, and later a motion for summary judgment, asserting sovereign immunity, but the same were overruled and denied, respectively. At the end of trial, a jury returned a verdict in favor of Ms. Justice and awarded her damages. The common pleas court thereafter denied a motion from Trooper Lombardo for post-trial relief seeking judgment notwithstanding the verdict, again asserting sovereign immunity.

On appeal, this Court reversed and remanded the matter to the common pleas court for the entry of judgment in Trooper Lombardo's favor. We concluded that Trooper Lombardo was acting within the scope of his employment at the time he restrained and handcuffed Ms. Justice. *Id.*, 173 A.3d at 1239. We explained that a Commonwealth employee enjoys immunity from intentional tort claims, even for intentional acts which cause emotional distress. *Id.*, 173 A.3d at 1238 (citing *Holt v. Northwest Pennsylvania Training Partnership Consortium, Inc.*, 694 A.2d 1134, 1140

---

[19] Generally, decisions of federal district courts and courts of appeals are not binding on this Court, even where a federal question is involved, but they may have persuasive value. *GGNSC Clarion LP v. Kane*, 131 A.3d 1062, 1069 (Pa. Cmwlth.), *aff'd*, 152 A.3d 983 (Pa. 2016).

19

(Pa. Cmwlth. 1997)). We noted the scope of employment standard was adopted from the RESTATEMENT (SECOND) OF AGENCY §228, above. We also noted that the RESTATEMENT (SECOND) OF AGENCY §229(1) provides, "To be within the scope of the employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized."[20] *Id.*, 173 A.3d at 1239. Further, we explained that,

> Under this standard, we do not look to see whether particular conduct was exercised in a negligent manner or even if that person intentionally caused the harm, but only to whether the conduct was authorized by the employer. Remember, normally this standard is used to determine whether the employer is liable for the conduct of its employee. If an employee was not considered acting within the scope of employment when the employee's conduct was negligent or intentionally tortious, an employer would never be liable for the negligent or intentional torts of its employees. To the

---

[20] Further, we noted that the RESTATEMENT (SECOND) OF AGENCY §229(2) sets forth certain standards to determine whether unauthorized conduct "is nevertheless within the scope of employment as sufficiently similar to or incidental to authorized conduct," including the following:

> (a) whether or not the act is one commonly done by such servants;
> (b) the time, place and purpose of the act;
> (c) the previous relations between the master and the servant;
> (d) the extent to which the business of the master is apportioned
> between different servants;
> (e) whether or not the act is outside the enterprise of the master or,
> if within the enterprise, has not been entrusted to any servant;
> (f) whether or not the master has reason to expect that such an act
> will be done;
> (g) the similarity in quality of the act done to the act authorized;
> (h) whether or not the instrumentality by which the harm is done
> has been furnished by the master to the servant;
> (i) the extent of departure from the normal method of
> accomplishing an authorized result; and
> (j) whether or not the act is seriously criminal.

*Justice*, 173 A.3d at 1239 n.10.

contrary, Section 231 of the Restatement (Second) of Agency (1958) specifically provides that acts may be within the scope of employment even if consciously criminal or tortious.

. . .

Whether his conduct was reasonable or not, intentional or not, tortious or not, carried out for an improper motive or not, are all irrelevant because Trooper Lombardo's use of force in placing Ms. Justice's hands behind her back and 'wrestling' with her to apply handcuffs was of the same general nature as that authorized or incidental to the conduct authorized, and use of force, in general, by State Troopers is not unexpected.

*Id.*

In ruling on preliminary objections, a court must accept as true all well-pleaded material allegations in a party's complaint and any reasonable inferences that could be drawn therefrom. *Thomas v. Corbett*, 90 A.3d 789, 794 (Pa. Cmwlth. 2014). However, a court is not required to accept a party's "legal conclusions, unwarranted inferences from facts, argumentative allegations, or expressions of opinion." *Id.* In the present case, while Mazur alleged in her amended complaint that Cuthbert acted outside the scope of her employment when she made the statements to the unemployment compensation representative, this is a legal conclusion and/or argumentative allegation that the trial court was not required to accept. Because Pennsylvania is a "fact pleading" jurisdiction, Mazur was required to articulate the specific facts underlying her assertion that Cuthbert's alleged statements were actionable. *See Brimmeier v. Pennsylvania Turnpike Commission*, 147 A.3d 954, 967 (Pa. Cmwlth. 2016), *aff'd*, 161 A.3d 253 (Pa. 2017). Moreover, we have previously held that "a court is not bound to accept as true any averments in a complaint which are in conflict with exhibits attached to it." *Baravordeh v. Borough Council*, 699 A.2d 789, 792 (Pa. Cmwlth. 1997), *appeal denied*, 725 A.2d 183 (Pa. 1998).

21

In the present case, Mazur alleged that Cuthbert made defamatory statements to the unemployment compensation representative, as well as Kreiser and McClain-Miller, both of whom worked for the Center.[21] However, like Cuthbert, both Kreiser and McClain-Miller were involved in the disciplinary process for the Center. Cuthbert's formal job description, which Mazur attached to her amended complaint, reflects that Cuthbert was required to gather witness statements in connection with pre-disciplinary conferences and to make recommendations to the central office concerning the appropriate level of discipline to be applied in each particular case. (Amended Complaint, Attachment 1.G.) Additionally, this job description also stated that Cuthbert's official duties included representation of the Center during the course of unemployment compensation proceedings. *Id.* We agree with the trial court that Cuthbert's job description could support a conclusion that Cuthbert was acting within the scope of her employment when she made the alleged defamatory statements.

This Court reached a similar conclusion in *Cimino v. DiPaolo*, 786 A.2d 309 (Pa. Cmwlth. 2001). In that case, a county constable sued a district justice for defamation, alleging that the district justice had falsely told law enforcement authorities that he was improperly overcharging Erie County for his services. Defining the "adjudicative responsibilities" of the district justice broadly enough to include "being faithful to the law," we affirmed a common pleas court's decision sustaining preliminary objections filed by the district justice on the ground that the constable's defamation claims were barred by the Sovereign Immunity Act. *Id.* at 311. In the course of explaining why the district justice had been acting within the scope of his employment, we emphasized the fact that the district justice had communicated his

---

[21] As noted above, Kreiser was the Center's Chief of Employee Relations and McClain-Miller was a Labor Relations Analyst for the Center.

22

suspicions only to law enforcement officials exercising "the authority to investigate such matters." *Id.*

Similarly, here, Cuthbert only made these alleged defamatory statements to other employees overseeing the internal investigation by the Center and to an unemployment compensation representative in conjunction with an ongoing unemployment compensation claim filed by Mazur, in the course of performing her required work duties. Further, because these work duties included conducting and assisting in pre-disciplinary conferences, collecting disciplinary investigation witness statements, recommending discipline to the central office, and representing the agency at unemployment compensation hearings, Cuthbert's conduct in making statements to her superiors and the unemployment compensation representative was specifically authorized by the Center. Hence, like the Pennsylvania State Police trooper in *Justice v. Lombardo*, Cuthbert appears to have been acting within the scope of her employment duties, which would generally entitle her to immunity against Mazur's defamation claim. However, our inquiry does not end here.

**Eligibility for Immunity**

Finally, Mazur argues that the trial court erred in sustaining Cuthbert's preliminary objections because Cuthbert was not eligible for any immunity as the false statements were made outside of the context of an unemployment compensation hearing and were in violation of the Center's own rules/policies.

While Mazur is correct that the statements upon which her defamation claim is premised were not made within the course of a hearing before an unemployment compensation referee, the fact remains that Cuthbert made the

23

statements in the course of performing her official work duties in preparation for the hearing, thereby shielding the same under sovereign immunity.

We now turn to Mazur's allegation that official policies prohibiting Commonwealth employees from making false statements necessarily places Cuthbert's statements outside the scope of her employment. This case presents a unique question of whether an employee takes herself out of the scope of her employment by knowingly making false statements to third parties, which directly conflict with an employer's written policy against making false statements. There is no question that Cuthbert, in her position as a human resources analyst 2 with the Center, participated in the initial internal investigation regarding the missing $500.00 and was, or at least should have been, aware of the subsequent police investigation. Moreover, accepting the allegations of Mazur's amended complaint as true, which a court must do when ruling on preliminary objections, the internal investigation failed to reveal what happened to the missing money and the subsequent police investigation did not result in any criminal charges against Mazur. Indeed, these allegations are confirmed in the attachments to Mazur's amended complaint, namely a police incident report dated May 20, 2016, a November 17, 2016 letter from counsel for the Center to an intake supervisor at the U.S. Equal Employment Opportunity Commission, and a November 3, 2016 written statement authored by McClain-Miller.

Nevertheless, the findings set forth by the unemployment compensation representative run directly contrary to the same, stating that Mazur was discharged for alleged dishonesty involving theft of money from her department.[22] If Mazur can establish that Cuthbert made knowingly false statements to her superiors and/or the unemployment compensation representative, a fact which is not entirely clear by

---

[22] Mazur attached to her amended complaint a copy of the notice of determination from the local service center reflecting these findings.

24

examining the limited pleadings herein, this could be in direct violation of the Center's policy, thereby taking Cuthbert out of the scope of her employment. Indeed, section 228 of the RESTATEMENT (SECOND) OF AGENCY provides, "Conduct of a servant is within the scope of employment if, but only if: (a) it is of the kind he is employed to perform" and "(c) it is actuated, at least in part, by a purpose to serve the master." §228(1)(a), (c). This section further provides, "Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." §228(2).

Certainly, an employee cannot be considered to be furthering an employer's interest in such a situation, nor can such conduct be considered merely incidental to authorized conduct. Moreover, a serious question arises as to whether such conduct constitutes a violation of the Public Official and Employee Ethics Act and/or the Governor's Code of Conduct,[23] which would further buttress Mazur's claim that the alleged statements made by Cuthbert were outside the scope of her employment with the Center.

While Mazur's amended complaint does not definitely establish that Cuthbert made knowingly false statements to her superiors or to the unemployment compensation representative, the exact nature of her statements, and/or whether her statements were simply misunderstood, the allegations contained within the amended complaint, which must be accepted as true, are sufficient to overcome Cuthbert's preliminary objections. If Cuthbert knowingly made false statements to third parties, she would not have been acting within the scope of her employment with the Center and, hence, would not be entitled to immunity. In any event, the matter must be

---

[23] Mazur also attached excerpts from each to her amended complaint.

25

remanded to the trial court for further proceedings with respect to Mazur's amended complaint.

Although Cuthbert failed to raise her affirmative defense of sovereign immunity in a responsive pleading as new matter, because said defense was clearly applicable on the face of the amended complaint, it falls within the exception allowing the defense to be set forth via preliminary objection. Accordingly, the trial court's order is affirmed in part and reversed in part, and the matter is remanded, consistent with this opinion.

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Margaret Mazur,               :
         Appellant       :
                       :   No. 1008 C.D. 2017
      v.               :
                       :
Jamie Cuthbert          :

## ***ORDER***

AND NOW, this 16th day of April, 2018, the order of the Court of Common Pleas of Allegheny County, dated April 7, 2017, is hereby affirmed in part and reversed in part and the matter is remanded, consistent with this opinion.

Jurisdiction relinquished.

_____
PATRICIA A. McCULLOUGH, Judge