IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Margaret Mazur,                :
           Appellant        :
                                :    No. 282 C.D. 2022
       v.                       :
                                  :    Submitted: February 24, 2023
Jamie Cuthbert              :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE STACY WALLACE, Judge


## *OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                       FILED: March 15, 2024

Margaret Mazur (Mazur) appeals, *pro se*, from the March 18, 2022 order entered by the Court of Common Pleas of Allegheny County (trial court), denying her motion for post-trial relief,[1] after a jury decided against her in her defamation lawsuit against Jamie Cuthbert (Cuthbert), a human resources analyst at the Department of Military and Veterans Affairs (Department), where they both worked. After careful review, we affirm.

---

[1] An appeal to this Court can only lie from **judgments** entered subsequent to the trial court's disposition of post-verdict motions, not from the order denying post-trial motions. *See Johnson the Florist, Inc. v. TEDCO Construction Corp.*, 657 A.2d 511, 514 & 513 (Pa. Super. 1995) ("An appeal from an order denying post-trial motions is interlocutory. Thus, it follows that an appeal to this Court can only lie from judgments entered subsequent to the trial court's disposition of post-verdict motions, not from the order denying post-trial motions[;]" and "jurisdiction in appellate courts can be perfected after an appeal notice has been filed upon the docketing of a final judgment").

On August 16, 2022, this Court entered an order *per curiam* directing Mazur to praecipe for entry of judgment in the trial court within 14 days. Mazur complied with our order on August 22, 2022.

## Facts and Procedural History

The Southwestern Veterans Center (SWVC) is one of six veterans' homes operated by the Department. Mazur worked as one of the SWVC's two accounting assistants. The other accounting assistant was Sharon Warden (Warden). Mazur and Warden were both supervised by Darren Lindsay (Lindsay), who worked as the SWVC's accountant.

The alleged defamatory statements stemmed from an event that took place on May 16, 2016. That day, Lindsay signed a check directing First National Bank to pay Mazur $4,784.00. Mazur was instructed to cash the check and use the money to replenish a petty cash fund that was used by SWVC's residents. After Mazur arrived at the bank, a teller accepted the check and handed the cash to Mazur. Mazur placed the cash in a bag, put it in her car, and drove back to the SWVC.

Warden was not in her office when Mazur returned to the SWVC. Mazur entered Warden's office and placed the bag of money on Warden's chair. When Warden returned to her office, she and Mazur started to count the money. At some point, they realized that $500.00 was missing and called the situation to Lindsay's attention. Mazur, Warden, and Lindsay were not able to locate the missing money. Lindsay contacted the bank and asked that an investigation be conducted. The next day, Lindsay went to the bank, discussed the situation with the relevant bank employees, and viewed videotaped footage of Mazur's encounter with the teller. The relevant account at the bank was properly balanced. The missing money was never located.

Cuthbert was asked to conduct an internal investigation into the disappearance of the missing $500.00. In connection with the investigation, Cuthbert procured written witness statements from Mazur, Warden, and Lindsay. While

2

performing that function, Cuthbert documented what the witnesses had told her and asked them to verify that the written statements accurately reflected their verbal accounts of the relevant events.

On May 26, 2016, Mazur was given written notice that a Pre-Discipline Conference was being held to determine whether corrective action was necessary. The notice advised Mazur of suspected violations of the Department's work rules. Although theft was listed among the allegations being considered, the Pre-Discipline Conference notice also listed more general allegations relating to the loss of Commonwealth property due to deficient work performance or unauthorized behavior. Mazur attended and was accompanied by her union representative. After the Pre-Discipline Conference was convened, Mazur was informed via written letter that she was being suspended pending further investigation of the missing money. After Mazur packed up her personal property, Cuthbert escorted her out of the facility.

After a union grievance was filed on Mazur's behalf, the matter was resolved, reaching a conclusion that Mazur could return to work after an eight-day suspension without pay. During her suspension, Mazur submitted a claim for Unemployment Compensation (UC) on May 26, 2016. When she submitted her application, Mazur indicated that she had been "terminated." (Trial Transcript (Trial Tr.) at 121.) She specifically advised the UC office that she had been terminated because of a "false charge of theft." *Id*.

A UC representative contacted Cuthbert about Mazur's claim. Cuthbert read the Pre-Discipline Conference notice to the UC representative. She also informed the UC representative that Mazur was not terminated, that she had only been "suspended" pending an investigation of theft charges, that she had failed to follow the proper process when counting money at the bank, and that because the Department was

3

never able to determine how the funds were taken, she would be coming back to work. *Id.* at 154, 159-160. The UC office denied Mazur's claim for unemployment benefits. The Notice of Determination for Mazur's claim said that Mazur "was discharged for alleged dishonesty" and that "[t]he alleged dishonest act involved theft of money from her department." (Reproduced Record (R.R.) at 1.) Cuthbert forwarded the UC office email to various members of the SWVC who were also involved in the investigation. Mazur later appealed the decision, and a hearing was held before a referee. Mazur appeared and testified at the hearing. The Department did not contest Mazur's appeal. The referee subsequently reversed the UC office's decision and awarded UC benefits to Mazur for the period of her suspension.

On April 27, 2017, Mazur resigned her employment, asserting she could no longer do her job because of extreme emotional distress caused by ongoing harassment and discrimination.[2]

**Action for Defamation**

On March 9, 2017, Mazur filed an amended complaint against Cuthbert, alleging that Cuthbert made knowingly false and defamatory statements regarding Mazur's purported theft and dishonesty to her superiors at the Department, and to the UC representative. She specifically stated that "[Cuthbert] stated to UC that [Mazur] was discharged for felony theft and dishonesty." (Amended Complaint at 6.) She further alleged that "[Cuthbert] caused documents to be filed in [Mazur's] official personnel file showing falsely that she was guilty of felony theft and dishonesty in

---

[2] After leaving her position with the SWVC, Mazur applied for UC benefits. Following the administrative denial of her claim, Mazur appealed the case to this Court. On the basis of the underlying record, this Court affirmed the administrative decision finding Mazur to be ineligible for benefits because her resignation had not been justified by a "necessitous and compelling reason[.]" *Mazur v. Unemployment Compensation Board of Review*, 193 A.3d 1132, 1137 (Pa. Cmwlth. 2018).

4

contradiction to actual investigative conclusions." *Id.* at 9. Mazur alleged that in so doing Cuthbert had acted outside the scope of her duties as a human resources analyst for the SWVC. Mazur described these statements as libelous on their face and stated that the same resulted in a loss of income, a loss of her reputation, shame, mortification, and hurt feelings. Additionally, Mazur alleged that these false statements resulted in an unjust final warning letter which placed her job and future employment in jeopardy. Mazur further alleged that the statements were not privileged because they were published by Cuthbert with malice and ill will toward her, with an intent to injure. Mazur sought compensatory and punitive damages, as well as interest and the costs of filing this suit.[3]

Cuthbert filed preliminary objections in the nature of a demurrer and to dismiss Mazur's suit on the basis that Cuthbert, as an employee of the Commonwealth acting within her official duties, was immune from suit under 1 Pa. C.S. § 2310.[4] The

---

[3] In addition to her defamation action against Cuthbert, Mazur commenced a separate action against the City of Pittsburgh and two police officers in the trial court. That action was based on allegations that the named officers had stated that they had enough evidence to arrest Mazur for stealing $500.00 from the SWVC. An appeal arising out of that action is presently before this Court at docket number 1220 C.D. 2021. Appeal quashed, *Mazur v. Nee* (Pa. Cmwlth., No. 1220 C.D. 2021, filed February 7, 2024).

Mazur also sued the Department and the SWVC in the United States District Court for the Western District of Pennsylvania, alleging that they had violated her rights under the Fourteenth Amendment to the United States Constitution, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and 42 U.S.C. § 1981. By order dated September 12, 2019, the District Court entered a judgment in favor of the Department and the SWVC, and against Mazur. *Mazur v. Southwestern Veterans Center*, Civil Action No. 17-826, 2019 WL 4345726, at *1, 40 (W.D. Pa. Sept. 12, 2019). The United States Court of Appeals for the Third Circuit later affirmed the District Court's decision. *Mazur v. Southwestern Veterans Center*, 803 Fed. Appx. 657, 663 (3d Cir. 2020) (unpublished).

[4] This section provides, in pertinent part, as follows:

> Pursuant to section 11 of Article I of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the

**(Footnote continued on next page…)**

5

trial court sustained the preliminary objections and dismissed Mazur's action. Mazur appealed. On April 16, 2018, this Court reversed the trial court's dismissal of Mazur's amended complaint. We determined that if the statements were defamatory, they would be outside the scope of Cuthbert's employment and, therefore, she could not claim sovereign immunity. We explained, "If Mazur can establish that Cuthbert made knowingly false statements to her superiors and/or the unemployment compensation representative, . . . this could be in direct violation of the [SWVC's] policy, thereby taking Cuthbert out of the scope of her employment." *Mazur v. Cuthbert*, 186 A.3d 490, 504 (Pa. Cmwlth. 2018). We remanded to the trial court for further proceedings.

**Jury Trial**

The case proceeded to a jury trial in November 2021. Mazur represented herself. During the trial, Cuthbert testified that she did not know why the UC office put what it did in the Notice of Determination. Mazur called numerous witnesses and introduced several emails authored by Cuthbert. However, none of them established that Cuthbert ever said to anyone that Mazur was discharged for alleged dishonesty or that the alleged dishonest act involved theft of money. After the parties had presented their cases and given their closing arguments, the trial court instructed the jury that Mazur bore the burden of proving, by a preponderance of the evidence, that Cuthbert had "published a statement or statements that she knew at the time were false to either her superiors, third parties or the unemployment compensation representative." (Trial Tr. at 513.) Before the jury began its deliberations, the trial court instructed the jury to

---

Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity.

1 Pa. C.S. § 2310.

6

render a verdict to answer the following question: "[D]id the Defendant, Jamie Cuthbert, publish statements that she knew at the time were false through either [her] superiors, third parties or the unemployment compensation representative?" *Id.* at 529. On November 17, 2021, the six-member jury unanimously answered that question in the negative, thereby concluding that Cuthbert had not defamed Mazur. *Id.* at 534-35.

In accordance with that verdict, the trial court dismissed all the claims that Mazur had brought against Cuthbert. Mazur filed a motion for post-trial relief. She requested the entry of a judgment in her favor notwithstanding the jury's contrary verdict. The trial court denied Mazur's post-trial motion on March 18, 2022. Mazur now appeals.

**Issues Presented**

On appeal,[5] Mazur raises the following five issues:

1. Did [the trial court] apply the law to the facts?

2. Did [the trial court] read to the jury the remand language?

3. Did [the trial court] limit my ability to bring up damages to the jury?

4. Did [the trial court] relieve Cuthbert of having to prove her defense of truth?

5. Did [the trial court] improperly interfere with the trial and ignore violations of candor?

---

[5] When presented with a trial court's decision not to grant a post-trial motion seeking the entry of a judgment notwithstanding the verdict, this Court must determine "whether, when reading the record in the light most favorable to the verdict winner and granting that party every favorable inference therefrom, there was sufficient competent evidence to sustain the verdict." *Bailets v. Pennsylvania Turnpike Commission*, 181 A.3d 324, 332 (Pa. 2018). A trial court's decision denying such a motion "will be disturbed only for an abuse of discretion or an error of law." *Quinby v. Plumstead Family Practice, Inc.*, 907 A.2d 1061, 1074 (Pa. 2006).

(Mazur's Br. at 2-3.)

## Analysis

### 1.

In her first issue, Mazur argues that the trial court failed to apply the law to the facts. She maintains that the trial court should have concluded that there was not sufficient evidence to support the jury's verdict. Specifically, she contends that the trial court failed to recognize that Cuthbert "admitted the defamation" at trial and should have, therefore, granted her post-trial motion based on the conclusion that defamation *per se* had occurred. (Mazur's Br. at 7-8, 10.) In support, she cites to the trial transcript at page 161, lines 15-16, during which Cuthbert testified:

> Q. Number five, the Claimant did not perform the job to the best of her ability. Did you say that to the UC representative?
>
> A. It was an allegation from the [Pre-Discipline Conference] notice. So they were all the allegations that were in the [Pre-Discipline Conference] notice which I read to the UC person.

(Trial Tr. at 161.)

Mazur also contends that Cuthbert admitted that she had never seen or been shown any evidence that Mazur either lost or stole the missing $500.00. She argues this "proves that [Cuthbert] willfully defamed [her] with known false allegations and accusations imputing that [she] committed the crime of theft" based on allegations that were never proven to be true. (Mazur's Br. at 16-17.) She claims that the jury should have found that Cuthbert defamed her and that the trial court erred in failing to find the verdict was against the weight of the evidence. We find the issue to be without merit.

8

As the trial court noted, "[t]he evidence of [] Cuthbert's alleged defamatory statements was ambiguous at best." (Trial Ct. Op. at 7.) We have reviewed the trial transcript and agree that none of the testimony or exhibits establish that Cuthbert ever "admitted" at trial that she made any **false** statements to the UC representative or to any of her superiors at SWVC. Further, Cuthbert testified that she did not tell the UC representative that Mazur had been "discharged" because of a "theft" of money. According to Cuthbert's testimony, she simply informed the UC representative that Mazur had been "suspended" pending an investigation into whether a "theft" had, in fact, occurred and read the charges from the Pre-Discipline Conference. (Trial Tr. at 154, 159-60.) She never stated to anyone that the allegations were established facts. She testified that the information she provided was truthful, and the exhibits offered at trial confirm that this is in fact what happened. The jury concluded that the allegedly defamatory statements at issue were fair comments to the UC office and not made with the sole purpose of causing harm to Mazur.

Furthermore, Mazur conceded at trial that she was the one who had incorrectly indicated on her UC application that she had been "terminated" because of a "false charge of theft." Therefore, the testimonial record contained sufficient evidence for the jury to conclude that the UC office's finding that Mazur had been "discharged for alleged dishonesty" had been based on Mazur's incorrect statements rather than on any allegedly defamatory statements attributed to Cuthbert. This action for defamation was brought against Cuthbert by Mazur based on allegations that Cuthbert said to her superiors and to the UC office that Mazur was fired for stealing money. Cuthbert's testimony at trial that she never made those statements verbally or otherwise was essentially found credible by the jury.

9

It is "the province of the jury to decide, under instructions from the court, as to the law applicable to the facts, and subject to the salutary power of the court to award a new trial if [it] should deem the verdict contrary to the weight of the evidence. *Borough of Nanty-Glo v. American Surety Co. of New York*, 163 A. 523, 524 (Pa. 1932). It is the jury's duty to evaluate and disseminate the parties' evidence, to come to a verdict, applying the facts presented to the law. "[O]ur system vests the responsibility of determining the facts with the jury and we will not upset their findings absent a showing that the verdict is capricious, against the weight of the evidence and resulted in a miscarriage of justice." *Mitzelfelt v. Kamrin*, 584 A.2d 888, 891 (Pa. 1990).

Our standard of review requires us to determine "whether there was sufficient competent evidence to sustain the verdict." *Bailets*, 181 A.3d at 332. Based on the record, we must agree with the trial court's conclusion that the jury's verdict was not capricious and did not result in a miscarriage of justice. It is undisputed that Mazur **was** suspended pending an investigation into whether she had either stolen or lost $500.00 of the SWVC's money. However, the jury chose to believe Cuthbert and not to credit Mazur's version of the events. At this stage, the Court "must read the record in the light most favorable to the verdict winner and afford her the benefit of all reasonable inferences." *Justice v. Lombardo*, 208 A.3d 1057, 1069 (Pa. 2019). Neither this Court nor the trial court may substitute its own judgment or Mazur's preferred outcome for the jury's verdict. *Worley v. County of Delaware*, 178 A.3d 213, 238 (Pa. Cmwlth. 2017).

In a separate argument, Mazur contends that the mere "allegations" of theft Cuthbert relayed to her superiors "imputed that she was guilty of the crime of theft thereby making the allegations defamation *per se*." (Mazur's Br. at 16.) We disagree.

10

In Pennsylvania, a conditional privilege "applies to private communications among employers regarding discharge and discipline." *Daywalt v. Montgomery Hospital*, 573 A.2d 1116, 1118 (Pa. Super. 1990) (holding that supervisor's communication to a personnel director of her suspicions concerning the plaintiff's alteration of her timecard was conditionally privileged). "A publication is conditionally privileged if the publisher reasonably believes that the recipient shares a common interest in the subject matter and is entitled to know." *Id.* However, conditional privileges are subject to abuse, and although the question whether a privilege applies is a question of law, the question of whether a privilege has been abused is one of fact. *See Agriss v. Roadway Express, Inc.*, 483 A.2d 456, 463 (Pa. Super. 1984) (citations omitted). A conditional privilege can be abused when publication: (1) is actuated by malice or negligence; (2) is made for a purpose other than that for which the privilege is given; (3) is made to a person not reasonably believed to be necessary for the accomplishment of the purpose of the privilege; or (4) includes defamatory matter not reasonably believed to be necessary for the accomplishment of the purpose. *Elia v. Erie Insurance Exchange*, 634 A.2d 657, 661 (Pa. Super. 1993) (footnote and citations omitted). Here, the undisputed evidence established that the members of the SWVC to whom Cuthbert sent the email were also part of the investigation, they shared Cuthbert's interest in the investigation and Mazur's UC claim and had a common interest in the outcome of the UC claim. *Daywalt*, 573 A.2d at 1119. Mazur failed to show any abuse of the privilege, as there was no evidence of "spite, malice, or improper purpose" on the part of Cuthbert. *Id.*

Mazur also argues that the record is devoid of any evidence "to support any of the charges" and this is "a clear indicator that all charges that were brought against [her were] in fact false and defamation *per se*." *Id.* at 22-23. However, the

11

internal investigation was pending at the time Cuthbert made the statements to the UC office and, as noted, the jury determined that her statements regarding an investigation did not entail making a false allegation of a crime. Applying our standard of review, we must agree with the trial court that the SWVC's internal investigation into a possible theft by Mazur was precipitated by reasonable ample evidence of record. As the trial court noted, the record reflects that Mazur went to the bank to cash a check. When she returned to the SWVC the amount was short by $500.00, which prompted the SWVC to conduct an internal investigation into the missing money, including whether Mazur had stolen it. According to the record, Cuthbert merely assisted in the investigation by taking statements of witnesses. The fact that the SWVC was unable to determine what exactly happened to the missing money does not mean that the investigation of a possible charge of theft was false or that Cuthbert's disclosure of the Pre-Discipline Conference notice was defamatory. As found by the jury, Cuthbert's statements regarding the allegations of theft were not the product of intentional, reckless, wanton, or even negligent conduct. Rather, the record shows that the SWVC made considerable investigative efforts to determine the whereabouts of the missing money.

Moreover, when Commonwealth employees act within the scope of their duties, they cannot be sued for defamation. *Brown v. Clark*, 184 A.3d 1028, 1030 (Pa. Cmwlth. 2018). As this Court has already determined, "the only way for Mazur to succeed on her defamation action against Cuthbert would be to show that Cuthbert's statements were made outside the scope of her duties with the [SWVC]." *Mazur*, 186 A.3d at 499. This Court also explained that Mazur needed to demonstrate that "Cuthbert made knowingly false statements to her superiors or to the unemployment compensation representative" to establish that Cuthbert was not acting within the scope of her duties when she made the relevant statements. *Id.* at 504. Here, the information

12

provided by Cuthbert was based on what she collected from witnesses whom she was required to interview for the purpose of the pending investigation and whether Mazur was entitled to UC benefits. As the SWVC's employee responsible for handling UC claims, Cuthbert was merely doing her job when she responded to the UC office's inquiries.

Finally, Mazur contends that the "charge of theft" should not have been disseminated to the UC office because the SWVC was "not a law enforcement agency" clothed with "the authority to charge [Mazur] for the crime of theft." (Mazur's Br. at 11.) First, the SWVC did not "charge" Mazur for theft. Rather, the Pre-Disciplinary Conference notice stated that the SWVC "was conducting an investigation into allegations concerning [Mazur's] conduct . . . [s]pecifically, . . Stealing/Theft." (R.R. at 8.) Moreover, a public employer does not need a conviction (or the level of proof required to procure a conviction) to suspend or discharge an employee who is believed to have engaged in criminal or unprofessional conduct. *See In re: Appeal of Zeber*, 156 A.2d 821, 825 (Pa. 1959). Here, Mazur was suspended pending the investigation into whether theft occurred.

Accordingly, we conclude the trial court did not erroneously apply the law to the facts for any of the reasons alleged by Mazur.

**2.**

Next, Mazur argues that she asked the trial court for permission to read to the jury certain language contained in our April 16, 2018 order and opinion, wherein we stated that if Cuthbert "knowingly made false statements to third parties, she would not have been acting within the scope of her employment with the [SWVC] and hence, would not be entitled to immunity." *Mazur*, 186 A.3d at 504. The trial court stated in response "[t]hat is the law, and the [trial court] will deal with that." (Trial Tr. at 101.)

13

Mazur contends that as a result, "**the jury did not know that the reason they were at the trial was due to a Remand from the Commonwealth Court**." (Mazur's Br. at 18) (emphasis added). We find the issue to be without merit.

First, to the extent Mazur was asking the trial court to inform the jury of the procedural history of the case, that information simply was not needed to determine whether Cuthbert's statements were defamatory. As the trial court explained, it did not read this language to the jury "because it was not necessary for proving [] Mazur's claims. The jury simply needed to determine whether [] Cuthbert's statements were defamatory. If the statements were found to be defamatory, [] Cuthbert would not be entitled to sovereign immunity." (Trial Ct. Op. at 6.) Mazur does not explain how knowing the pretrial history of the case would have impacted the jury's ability to render a true verdict.

Moreover, per our remand, Mazur needed only to prove that Cuthbert's statements were defamatory to succeed on her claim. The trial court instructed the jury that Mazur could not hold Cuthbert liable for defamation without establishing that Cuthbert had knowingly made false statements about Mazur. (Trial Tr. at 509-13.) The jury was instructed accordingly. There was no error.

**3.**

Next, Mazur argues that the trial court improperly limited her ability to discuss her damages in front of the jury during her closing statement. (Mazur's Br. at 18-19.) Since the jury determined that Cuthbert could not be held liable for defamation in the first place, however, Mazur's alleged damages are not relevant to the other issues presented in this appeal. *Stecher v. Ford Motor Co.*, 812 A.2d 553, 554 (Pa. 2002). The jury unanimously determined that Mazur could not hold Cuthbert liable for defamation. *Id.* at 534-35. For this reason, any issues surrounding the nature of

14

Mazur's damages are now moot. *Zitney v. Appalachian Timber Products, Inc.*, 72 A.3d 281, 290 (Pa. Super. 2013).

Nevertheless, even if the jury had found Cuthbert liable, the trial court did not err. During the jury instruction conference, the trial court explained to Mazur that because she put forth **no evidence of any special damages** during the trial, she could not ask the jury to award her a specific amount of damages. (Trial Tr. at 481.) The trial court explained to Mazur "you are never permitted to argue a specific number unless [], you have put evidence in of a specific number, for example, medical bills or wage loss, and you have not done that." *Id.* at 486-87. The trial court further explained that because Mazur did not provide any evidence during trial that she sustained any financial losses, **other than defamation *per se* damages**, she was limited to arguing those in her closing. This was a correct statement of the law.

A defamatory statement which "imputes a criminal offense, loathsome disease, business misconduct, or serious sexual misconduct . . . constitutes defamation *per se*." *Krolczyk v. Goddard Systems, Inc.*, 164 A.3d 521, 531 (Pa. Super. 2017); *Rose v. Dowd*, 265 F. Supp. 3d 525, 531 (E.D. Pa. 2017). A plaintiff who pleads and proves slander *per se* need not prove special damages to recover. *Walker v. Grand Central Sanitation, Inc.*, 634 A.2d 237, 242, 244 (Pa. Super. 1993), *appeal denied*, 651 A.2d 539 (Pa. 1994). Pennsylvania courts apply "special damage" to mean calculable monetary losses, such as out-of-pocket expenses. *Phantom Fireworks Showrooms, LLC v. Wolf*, 198 A.3d 1205, 1220 (Pa. Cmwlth. 2018).[6] When a plaintiff does claim "special damages" for a specific financial loss in an action for defamation *per se*, any

---

[6] Of course, the fact that *per se* defamation plaintiffs are not required to plead or prove "special damages" does not absolve them from providing proof of any damages. Rather, "a [defamation *per se*] defendant . . . is liable for the proven, actual harm the publication causes . . . . Actual harm includes impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering." *Brinich v. Jencka*, 757 A.2d 388, 397 (Pa. Super. 2000).

special damages claimed must be established through competent evidence concerning the injury. Here, Mazur did not claim that she suffered any specific amount of economic losses, such as lost profits, loss of income, or other pecuniary loss, in her complaint or at trial. Therefore, as the trial court appropriately warned Mazur, she was precluded from arguing to the jury that she should be awarded a specific damages award in her closing statement. Accordingly, we find no error by the trial court, and, consequently, Mazur's contention is without merit.

**4.**

In her next issue, Mazur contends that the trial court should have informed the jury that Cuthbert was required to prove the "truth" of her own statements rather than requiring Mazur to prove that those statements were false. (Mazur's Br. at 7, 19-23.)

At the outset, we note that Mazur did not object to the relevant instructions before the case was submitted to the jury. (Trial Tr. at 465-70.) Therefore, she has waived the issue for purposes of this appeal. *Williams v. Southeastern Pennsylvania Transportation Authority*, 574 A.2d 1175, 1178 (Pa. Cmwlth. 1990). In addition to the issue having been waived, Mazur's argument concerning the allocation of the burden to prove either truth or falsity is wholly lacking in merit.

First, the trial court's jury instruction mirrored this Court's remand instructions. In our prior opinion, we stated that Mazur needed to "establish that Cuthbert made knowingly false statements to her superiors and/or the unemployment compensation representative" in order to prevail. *Mazur*, 186 A.3d at 504. Applying this Court's language, the trial court determined that Mazur could not hold Cuthbert liable for defamation without establishing that Cuthbert had knowingly made false

16

statements about Mazur. (Trial Tr. at 458, 466-70.) The jury was instructed accordingly.

Moreover, Mazur fails to explain how she was impacted because Cuthbert did prove the truth of her statements. Based on the undisputed testimony given during the trial, it was clear that Cuthbert did not tell the UC office that Mazur had been "discharged," "terminated," or "fired" for stealing money. Rather, Cuthbert correctly informed the UC office that Mazur had simply been "suspended" so that an investigation could be conducted to determine what had happened to the missing money. It was undisputed that Mazur was suspended pending an investigation into whether she had either stolen or lost $500.00 of the SWVC's money. In contrast, Mazur could not have proven the statements were false because she admitted at trial that she was the one who indicated that she had been terminated because of a false charge of theft. Accordingly, the record supports the trial court's rationale.

**5.**

In her final issue, Mazur asserts that the trial court "improperly interfered throughout the trial" while she was in the process of "questioning hostile witnesses." (Mazur's Br. at 23.) Her argument is based on instances during which the trial court briefly asked Mazur and the testifying witnesses to clarify certain things about how $500.00 of the SWVC's money had been lost and the extent to which specific facts were in dispute (or not in dispute). *Id.* at 23-32.

Mazur's complaints about the trial court's questions lack merit and do not warrant any form of relief. A trial judge sometimes has a "duty to question witnesses to clarify existing facts and to elicit new information." *Commonwealth v. Lanza*, 323 A.2d 178, 179 (Pa. Super. 1974). In this particular case, we are satisfied that the trial court's questions were designed to clarify the relevant facts for the jury and move the

17

proceedings along in an efficient manner.  The trial court's brief questioning of the witnesses was "not biased or unduly protracted." *Commonwealth v. Hodge*, 369 A.2d 815, 819 (Pa. Super. 1977).  The record supports that Mazur received a full and fair opportunity to present her case.  She was not entitled to unilaterally "control the proceedings" in a manner that would have been prejudicial to Cuthbert. *Commonwealth v. Roldan*, 572 A.2d 1214, 1215 (Pa. 1990).

Accordingly, for all of the above reasons, the order of the trial court is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Margaret Mazur,      :
    Appellant   :
          :  No. 282 C.D. 2022
   v.       :
          :
Jamie Cuthbert     :

## *<u>ORDER</u>*

AND NOW, this 15th day of March, 2024, the March 18, 2022 order of the Court of Common Pleas of Allegheny County is hereby AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge